## IN THE U.S. DISTRICT COURT OF CONNECTICUT
### at Hartford

John Sakon
NF OWS

v.                                                     Case:  3:23-cv-00602-AWT

State of Connecticut

Tammy Nguyen-O'Dowd                                    ADA Retaliation/Discrimination
Leo Diana
Robert Nastri
                    *Defendants*

OBJECTION MOTION TO DISMISS [25] (Corrected for Typos)

Defendants have moved to dismiss the complaint alleging it is a collateral attack on a custody judgment entered in the Connecticut Superior Court.   This is not true. Plaintiff alleges the instant case challenges the Constitutionality of the doings of the Connecticut Family Courts in its systemic interference with the Constitutional established rights of the parental-child relationship.  Accordingly, the plaintiff and the next best friend of the minor child object to the Motion to Dismiss.

1. Procedural and Factual History

The entire complaint revolves around the factual history of a father seeking to maintain the father-son relationship and a child seeking to maintain his relationship to a father.  The father is a "Fit ~~Father~~ Parent" who has been found by the State of Connecticut Department of Children and Families *does "not pose a risk to the health, safety of well-being of children."*

The father has not seen his child since July 8, 2022.  All attempts to reestablish the father-son relationship has been thwarted by the unconstitutional actions of four

(or more) judges acting under the color of law, a §1983 civil rights violation.

In her memorandum of decision, issued after the filing of the Federal Action for violation of ADA Title II rights, Judge Nguyen-Odowd required visitation of the child to occur at a mythical "Therapeutic Supervised Visitation Agency", at a projected cost of $100/hour for the eight allowed hours of visitation per week or a collected cost of $800/week or $41,600/year. Judge Nguyen-Odowd also found the plaintiff indigent giving evidence that said order requiring visitation was no more than a thinly veiled retaliation against the plaintiff for filing the federal lawsuits *Sakon v. Nguyen-Odowd,* No. 3:22-cv-00528 (AWT) (later *Sakon v. State of Connecticut and Nguyen-Odowd.,* No. 3:22-cv-00897(AWT)). [1]

Judge Nguyen-Odowd then made the (false) finding of fact that the plaintiff was diagnosed with a mental illness aka Narcissistic Personality Disorder ("NPD") and required the plaintiff to enter and pay for "treatment" for his disability as a condition of visitation in violation of Title II of the American with Disabilities Act ("ADA") and the 5th Amendment to the Connecticut Constitution. Judge Nguyen-Odowd, Judge Diana, Judge Nastri and Judge Daniel J. Klau all took actions enforcing this unconstitutional violation of the plaintiff's rights and discrimination under Title II of the ADA under the color of law.

The constitutional claims are made pursuant to *Troxel v. Granville*, 530 U.S. 57,

---

[1] In *Sakon v. State of Connecticut et al.,* No. 3:22-cv-00897(AWT), the plaintiff challenges the Title II ADA constitutional violations of Judge Nguyen-Odowd at trial and before her Memorandum of Judgment of July 15, 2022. In the instant case, the plaintiff challenges the actions of Judge Nguyen-Odowd, Judge Diana, Judge Nastri and Judge Klau from July 15, 2022 and thereafter.

65 (2000); *Murdock v. Pennsylvania*, 319 U.S. 105 (1943); and *West Virginia State Board of Education, et al v. Walter Barnette et al., 319 U.S. 624 (1943)*. The discrimination claims are made pursuant to Title II of the American with Disabilities Act. The civil rights claims and the ADA claims invokes the jurisdiction of this court.

Under the amended version of § 1983, the plaintiff seeks declaratory relief. *See Just. Network Inc. v. Craighead County*, 931 F.3d 753, 762 (8th Cir. 2019) ("Our conclusion that [defendant judges] are entitled to judicial immunity does not resolve whether [plaintiff] may seek injunctive and declaratory relief."); *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009) (per curiam) ("[J]udicial immunity does not bar declaratory relief . . . ."); *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (per curiam) ("[J]udicial immunity protects the Defendants only from Appellant's request for injunctive relief. But § 1983 does not explicitly bar Appellant's request for declarative relief."); *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003); Davis v. Campbell, No. 13-cv-0693, 2014 WL 234722, at *9.

In a § 1983 claim, a plaintiff may seek injunctive relief. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam) (citing *Forrester v. White*, 484 U.S. 219, 227–29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)) (N.D.N.Y. Jan. 22, 2014. The jurisdiction of the court is limited by constitutional constraints.

In addition, a judge can be sued for exceeding her jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 12 (1991) citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351 (1872). Lastly, a judicial immunity does not extend to administrative actions. *Forrester v. White,* 484 U.S. 219, 228 (1988)

2.  <u>Legal Precedent Pre-Dating the Founding</u>

*4 "Remember the law of Moses My servant, even the statutes and ordinances which I commanded him in Horab for all Israel.*

*5 "Behold, I am going to send you Elijah the prophet before the coming of the great and terrible day of the LORD:*

*6 "He will restore the hearts of the fathers to their children, and the heart of the children to their fathers; so that I will not come and smite the land with a curse.*

Malachi 4 verses 4-6.  New American Standard Version (1995).

Our founding fathers birthed this country on the bible.  The parent-child relationship is a constitutionally protected First Amendment right under the due process clause of the Fourteenth Amendment and its Fifth Amendment counterpart, being a fundamental liberty interest predating the founding.  See *Troxel v. Granville*, 530 US 57, 65 (2000).  In the 1700's, no court in the land would even think of separating a law abiding and fit father from his children or deprive the children of a loving and fit parent.

Today America is in crisis.  *"If destruction be our lot, we must ourselves be its author and finisher.* (Abraham Lincoln).*"*  Throughout our history, the strength of America was founded in the American Family.  If a foreign power sought to destroy America, it would seek to fund those movements that would separate law abiding fathers from their children. Statistics reveal *"Something is rotten in Denmark."*  Nearly 40 percent of fathers are no longer in contact with their children a year after divorce.[2]

---

[2] Citations too numerous to index.  See collected speech's of Barack Obama; See Report of the Tampa Bay Times, Tom Zucco, published 02/07/1996, Updated 09/15/2005.; See RéGNIER-LOILIER Arnaud, "When fathers lose touch with their children after a separation", *Population*

The percentage increases with time.  Nearly half of children living with a divorced mother have not seen their fathers at all in more than one year.[3]  *So have we been smited with a curse.*  This is, in part, the fault of our family courts and their routine sublimation of Constitutional Right of the parent-child relationship with the hubris that a judge may decide the best interests of the child.  For example, the State of Connecticut routinely issues more than 30,000 protective orders each year mostly against men despite the fact that men are more likely victim of domestic violence and despite the fact that the majority of cases where a protective order is issued, no violence is in evidence.[4] [5] These protective orders mostly served to separate fathers

---

*& Societies*, 2013/5 (No 500), p. 1-4. URL: https://www.cairn-int.info/journal-population-and-societies-2013-5-page-1.htm;

[3] Anderson J. The impact of family structure on the health of children: Effects of divorce. Linacre Q. 2014 Nov;81(4):378-87. doi: 10.1179/0024363914Z.00000000087. PMID: 25473135; PMCID: PMC4240051.

[4] In *United States of America vs. Zackey Rahimi*, No. 21-11001, the United States Court of Appeals for the Fifth Circuit noted the use of protective orders as "*an affirmative element in divorce strategy.*"  "*Many divorce lawyers routinely recommend pursuit of a civil protection orders for clients in divorce proceedings as a tactical leverage device.*"  Jeannie Suk, Criminal Law Comes Home, 116 Yale L.J. 2, 62 n.257(2006).  See also, e.g. Randy Frances Kandel, *Squabbling in the Shadows: What the Law Can Learn from the Way Divorcing Couples Use Protective Orders as bargaining Chips in Domestic Spats and Child Custody Mediation*, 48 S.C. L. Rev. 441, 448 (1997).

[5] Over 30,000~~27,000~~ PO's are issued annually in Connecticut to the utter destruction of the Connecticut Family.  Rarely does a marriage survive a PO and virtual custody of the children is granted to the alleged victim without any due process.  80-95% of all PO's in Connecticut are issued against the man.  In a 2010 National Study, the CDC determined men were victims of 624,000 *more incidents* of intimate partner violence than women annually.  The two facts

from their children.   A court may issue orders of visitation, and while custodial interference is a crime in the State of Connecticut, there is no evidence that any criminal court in Connecticut has ordered any arrest of any mother under G.G.S. § 53a-98 for protracted violation of court orders of visitation.[6]   As is the case with this plaintiff, it is more likely a father will be arrested when trying to exercise his Constitutional Rights to a parent-child relationship.[7]

The simple role of father is to give provision and protection for his family. But Fatherhood goes much deeper – developing the spiritual, intellectual, emotional and financial well-being of the child. To do this, dads need to be present in their children's lives.   While the aforementioned bible verse appeals to the people to "remember" the

---

cannot be reconciled.  As such, this represents a systemic violation by our Connecticut Courts of the Fifth Amendment of the Connecticut Constitution which prohibits discrimination based upon sex.

[6] Police refused to investigate plaintiff's complaint of more than 70 instances of violation of court ordered visitations, the prosecuting attorney refused to file charges, and two criminal court judges siting in criminal court in Hartford have no recollection of a single criminal charge for custodial interference, a Class A misdemeanor under CGS § 53a-98, being prosecuted in the Hartford District or in Connecticut.

[7] I was falsely arrested 6 times on 16 felonies and 1 misdemeanor by complaint of the mother for alleged violations of a protective order when trying to exercise my parent-child relationship. While I faced a total of 151 years in prison, and spent four months at a SuperMax prison not being able to post a $1,150,000 bond, I refused a plea deal with suspended sentence as I would have forfeited my parental rights.  The charges so absurd, that after offering *no defense*, I was found innocent by a jury after a mere 18 minutes of deliberations.  Facing five years in prison for each alleged felony, is it any wonder fathers walk away?  Approximately 20,000 fathers walk away from their children annually in the State of Connecticut due to laws claimed to protect the family.

covenant with God, it implies more than God's message to obey his laws. God is pleading as "*A father's presence is a gift that shapes a child's world.*"

God granted custody of the children to their parents. It is hubris for a judge of man to remove custody from a "fit parent" *lest God come and smite thee with a curse*.

### 3. Sakon II and Sakon III[8]

In *Sakon v. State of Connecticut et al.,* No. 3:22-cv-00897(AWT) three substantial claims are advanced. My first claim is the violation of the ADA Accommodation Order by Judge Nguyen-Odowd and subsequent retaliation when I exercised my Accommodation Rights. My second claim is the Judicial Department's dismissal and refusal to hear my ADA Grievance and the State's referral of the grievance appeal *to this court*. The third claim is the Constitutional Violation and discrimination of the parent and child by Judge Nguyen-Odowd in removing custody of a fit father for an alleged disability (in violation of Title II of the American with Disabilities Act and Amendment Fifth of the Connecticut Constitution); and creating orders whereby the father had to pay a fee and submit to "reeducation" to exercise a Constitutional Right.

In *Sakon v. State of Connecticut et al.*, No. 3:22-cv-00602-AWT (the "instant case"), I claim (I) conspiracy in deprivation of rights under color of law by the State and its employees, a politic holding burden under the ADA for compliance; (2) conspiracy of the defendants for imposing a charge or payment of a fee for the enjoyment of a constitutional right; (3) conspiracy of the defendants requiring the

---

[8] Sakon I and Sakon II are considered the same case. Sakon I aka *Sakon v. Nguyen-Odowd, No.* 3:22-cv-528(AWT) was withdraw and refiled as (Sakon II) *Sakon v. State of Connecticut et al.,* No. 3:22-cv-00897(AWT).

father to reeducate his beliefs to a *"compulsory unification of opinion",* a constitutional violation under the First Amendment.   A later due process issue arose when the defendants refused to hear petitions (motions) to the court in an active case in violation of the U.S. Constitution and *Ahneman v. Ahneman*, 243 Conn. 471, 484 (1998) and further refused to timely docket and hear motions for which a request for leave had been granted.[9] [10]   The State and Federal Courts have concurrent jurisdiction as to Constitutional Matters of due process.

In short, the "best interest of the child" standard cannot ~~not~~ allow the discretion of family court judges to interfere with constitutionally protected parent-child relationship of a "fit parent"; cannot allow the discretion of family court judges to discriminate based upon sex in systemically awarding sole and physical custody primarily to the mother; cannot allow the discretion of family court judges to discriminate based upon belief; and cannot allow the discretion of the family court judges to discriminate against a "fit parent" based upon any physical or mental impairment.

The issue is the inevitable expansion, without any checks or balances, of judicial discretion as to the "best interests of the child", creating a judicial  conspiracy to

---

[9] The lower court defendant judges required all parties to file a *'Request to File"* for all *Pendente Lite and trial motions.*  A clear violation of  *Ahneman.*  As a result there were 441 "Requests"; 140 Motions for Contempt for lost visitations which were not heard; and 73 pleadings rejected by the court.  The requirement for a *Request to File* raises constitutional due process issues.

[10] The refusal of the family court to docket and hear matters pending for several years in a meaningful time and in a meaningful manner is also a due process issue.  *Armstrong v. Manzo* 380 U.S. 545, 552 (1965).

discriminate against a "fit parent" by the sublimation of the father's and child's Constitutional Rights to the hubris of a judge's discretion in deciding what they think is the best interest of someone else's child. The road to hell is paved with the best of intentions. The Constitution is the necessary check on this abuse of power which has damaged the very fabric of our society by separating children from their fathers *lest God come and smite (this country) with a curse.*

4. The *Younger* Abstention Doctrine Does not Apply.

Defendants claim the doctrine found in *Younger v. Harris,* 401 U.S. 37 (1971) applies. However, the instant case does not interfere with the State Court Proceedings as to the custody of the child. *See brief in F.S. v. J.S.,* Case No. AC 45698, Appellate Court State of Connecticut. Attached hereto as Exhibit A. Nowhere in the Prayer for Relief does the plaintiff seek an order of custody of the child. The plaintiff seeks, *inter alia,* compensatory and punitive damages, declaratory and injunctive relief for violation of the plaintiff's rights under the color of law.[11] The issues of legal and physical custody have nothing to do with the constitutional rights of the parent-child relationship as found in *Troxel v. Granville*, 530 U.S. 57, 65 (2000); have nothing to do about systemic discrimination against a fit parent based upon alleged mental disability in violation of *Title II of the ADA 28 CFR §35.130(g)*; have nothing to do with the taxation of a constitutional right as

---

[11] Under certain circumstances, a judge is subject to a monetary award. In addition, any recommended monetary award in federal court against the state can be submitted to the Connecticut Office of the Claims Commissioner pursuant to C.G.S. §§ 4-141 - 4-165c and in §54-102uu; including claims related to findings of a discriminatory practice pursuant to C.G.S. § 46a-82.

prohibited by SCOTUS in *Murdock v. Pennsylvania*, 319 U.S. 105 (1943); and have nothing to do with the a "compulsory unification of opinion" which is antithetical to the values set forth in *West Virginia State Board of Education, et al v. Walter Barnette et al., 319 U.S. 624 (1943).*

The three principal exceptions to *Younger* include bad faith and harassment, patently unconstitutional statutes, and the lack of an adequate state forum. *Younger*, 401 U.S. at 53-54. The bad faith exception applies to criminal prosecutions and does not apply here.   The second exception to *Younger* abstention is the patently unconstitutional exception. The third exception to federal court abstention is on premises on "lack of an adequate state forum." *See* Stagner, *Avoiding Abstention: The Younger Exceptions*, 29 Tex. Tech. L. Rev. 137, 163 (1998). For example, the SCOTUS found that federal intervention is appropriate under this exception if the state courts are biased and unable to be trusted on a particular issue. *Gibson v. Berryhill*, 411 U.S. 564 (1973).  Even if plaintiff prevails in his state court appeal, there is no avenue available to plaintiff to make claim for his constitutional *Prayers for Relief* found in the complaint as to the violations of his constitutional rights.  In addition, any State Court will be biased and unable to be trusted on the particular issues raised by the plaintiff. It is political suicide in Connecticut for a court to interfere with the feminist movement, the "rights of mothers', the #metoo movement, whether the gains are proper, ill-gotten or not.  The result is a souring increase in absentee fathers to the detriment of the children and society.  See concerns of Barack Obama in address to the nation.

The key to the *Younger* exception is irreparable injury sufficient to overcome the

principles of federalism and comity.  The inability for this parent, my child and 50% of all fathers to exercise our constitutional rights to the parent-child relationship is clearly irreparable harm of a constitutional right. *Troxel v. Granville*, 530 US 57, 65 (2000).  Placing a $41,600/year financial burden for the exercise of a constitution right of visitation is unconstitutional.  A State may not impose a charge for the enjoyment of a right granted by the Federal Constitution.  See *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943).   Requiring a fit parent to seek therapy to conform his beliefs is a "compulsory unification of opinion" which is antithetical to the values set forth in the First Amendment.   See *West Virginia State Board of Education, et al v. Walter Barnette et al.,* 319 U.S. 624 (1943).

Certainly, a compulsory unification of opinion of the best interest of the child was widely exercised in Fascist Germany and Communist China.  ~~The~~ Nazi Germany ruled the best interest of the child was to join the Hitler youth, wear a uniform, train in weapons and defend the fatherland. The Hitler youth totaled 8.8 million members with an average age of 16.   By 1945, sectors of the German Army, such as the 'Volksstrum" (People's Storm), were comprised of children as young as 12.   From 1944 to 1945, tens of thousands of Hitler youth, from the age of 12-14, died on the front lines.  From 1967 to 1978, Mao forced 17 million youth to be taken from their parents and forced into political indoctrination in the *"best interests of the child."*  Could not happen in America you ask?  A California Legislature passed a bill, AB-957, which would "require parents to 'affirm' the 'gender transition' of any child", or risk losing custody.  This could include the requirement a parent to affirm irreversible operations which could sterilize the child.  Supporters of the bill claim a judge would properly

exercise their "discretion" in such situations.   The U.S. Constitution provides protection for such violations as historically found in Germany, China and California of the parent-child relationship under the First and Fourteenth Amendment.   Is it constitutional to empower a judge with the discretion to order sex change operations of your children? Or for a State to order your 12-year old child to go to war? Or for a State to reeducate your child to the Communist Manifesto rather than from the beliefs of his family founded in religion?

The sole protection from such abuse in our society is the Constitution.   The Constitution logically extends to  protect children from unwarranted state interference with their relationships with their parents." _Smith   v. City of Fontana,_ 818 F.2d 1411, 1418 (9th Cir. 1987) _overruled on other grounds by Hodgers-  Durgin v. Ia Vina,_ 199 F.3d 1037 (9th Cir.1999). The Constitution protects not only a special community of thoughts,  experiences, and beliefs but also distinctively personal aspects of one's life.'" _Board of Dir v. Rotary Club,_ 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (quoting _Roberts v. United States Jaycees,_ 468 U.S. 609, 619-20, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)); _see also Conti v. City of Fremont,_ 919 F.2d 1385, 1388-89 (9th Cir.1990).

The current discriminatory policies arising of the expansion of discretion of the _best interest of the child doctrine_ to whatever conforms to a judge's belief may be a direct cause to soaring rates of father absenteeism.  This is a crisis that threatens the very fabric of our society.  The only rule the State may have in divorce proceedings concurrent with the fundamental rights found in the U.S. Constitution is to determine whether the parents are fit.   A fit parent leaves little "discretion" to a judge.  A Fit

Parent is law-abiding; puts a roof over the child's head; food on the child's table; cloths on a child's back; does _not_ pose a risk of injury; and takes an active interest in the child's life. I have no criminal record; do not pose a risk of injury to my child, raised two children in a prior controversy-free 27-year marriage to adulthood.  My older children hold very substantial positions in society.  I was the sole provider of O.S. in the instant case, which was controversy free until I informed the mother I sought divorce as she was an alcoholic, posed risk of injury to the child and became physically abusive while intoxicated.

In *New Orleans Public Service, Inc.* (NOPSI) *v. Council of the City of New Orleans*, 491 U.S. 350 (1989), the Supreme Court limited the extent to which *Younger* abstention applies in civil cases. The plaintiff filed suit in federal court seeking an injunction against the defendants based upon the defendant's violation of the U.S. Constitution.  Where a constitutional challenge is made, *Younger* does not apply.

> *The Younger Doctrine does not apply.*

5. The *O'Shea* Abstention Doctrine Does not Apply.

Defendants claim the doctrine found in *O'Shea v. Littleton,* 414 U.S. 488 (1974) applies.  However, the instant case is not a state criminal proceeding and defendants admit that O'Shea has only limited civil applications involving the operations of state courts.  In the instant case, this plaintiff does not seek any review of the operations of a state court,[12] this plaintiff is making complaint about the systemic violations of Title

---

[12] The plaintiff does claim that the State Judiciary does not follow the due process guidelines in ADA Grievance procedures by refusing to calendar and hear grievances

II of the American with Disabilities Act and the systemic violation of Constitutional Rights of litigants by the Connecticut Judiciary and State actors.

*The O'Shea Doctrine does not apply.*

6. The *Domestic Relations* Abstention Doctrine Does not Apply.

*Ibid arguments made above.*   The underlying issues are violations of the plaintiff's Constitutional Rights and Title II ADA rights against discrimination.  These rights are not matrimonial in nature.  In addition, state courts judges are not likely or willing to give up their coveted *"judicial discretion"* arising from the omnibus *"best interest of the child standard"* and may be biased on relinquishing such authority and unable to be trusted on this particular issue. *Gibson v. Berryhill*, 411 U.S. 564 (1973). Even if plaintiff prevails in his state court custody appeal, there is no avenue available to plaintiff to seek redress for his constitutional *Prayers for Relief* found in this complaint as to the violations of his constitutional rights and the systemic violation of the rights of fathers.

In the prayer for relief, plaintiff makes no claim for this court to vacate the July 15, 2022 Custody Judgment.  Due appeal of that decision has been filed.  The plaintiff seeks to enforce the fundamental constitutional rights of the parent-child relationship of a fit parent.  At no time did the state find the plaintiff was not a "fit parent" or posed a risk of injury to the child. In fact the Connecticut Department of Children and Families found, and Judge Nguyen-Odowd acknowledged, the father did not pose a risk to the health, safety or well-being of any children. *See Exhibit A* p. 15, 17, 29, 134.

---

against sitting judges and dismissing all such grievances in violation of the act.

Dr. John J. Sakon, the plaintiff's 40-year old son and faculty member of the UCLA School of Medicine, testified the plaintiff was a good parent in all aspects.[13]   The plaintiff had no criminal record, no history of substance abuse, had demonstrated a long history of being able to provide for and educate two older children to adulthood in a prior incident free 27-year old marriage and was elected a Deacon in his church.

Due to the conspiratorial actions of the defendants so as to <span style="color:red">punish</span> the plaintiff for daring to exercise and defend a constitutional right, the plaintiff has not seen his son since July 8th, 2022.  Lawyers run in fear for their careers of upsetting judges despite their routine unconstitutional exercise of discretion in Family Court.  The defendants refused to take action in the best interests of the child to reunite the father-child relationship in any form. See Transcript of Proceedings, May 4, 2023, HHD-FA16-6071228-S, *Sakon v. Sakon,* Superior Court at 90 Washington Street. Hartford, Connecticut Exhibit B.

Take, for example the discriminatory doings of defendant Nastri.  After the plaintiff had not seen his son for ten months, Judge Nastri refused to act even after the mother testified in court that it was in the best interests of the child to see the father in a therapeutic setting.[14] *Ibid,* p. 20.  Judge Nastri refused to take action when the mother refused visitation after a licensed psychologist was offered to serve as the mythical "Therapeutic Supervised Visitation Agency.  *Ibid p. 13-14.*  Judge Nastri refused to define what constitutes a "Therapeutic Supervised Visitation Agency.  *Ibid.*

---

[13] The transcript of Dr. Sakon's testimony is available and will be offered in evidence at trial.

[14] The father attempted visitation with Dr. Richard Lauerman as supervising host. *ibid p. 13.* See Exhibit C.

Judge Nastri refused to take action when the mother testified it was not in the best interests of the child to see his father due to the father's alleged disability.  *Ibid*, p.20. The court refused to take action for visitation when it was presented evidence that "*John Sakon does not pose a risk to the health, safety, well-being of children*".  *Ibid*, p. 30-31. The court refused to consider the Statutory Requirement for a parenting plan noting it is irrelevant. *Ibid*, p.35.   Judge Nastri refused action when the father attempted visitation with a paid supervisor.  *Ibid,* p. 36.  Judge Nastri refused to take action when the mother discriminated against the father for an alleged mental illness. *Ibid.* p. 27.  Judge Nastri required the plaintiff to engage in therapy as a condition of visitation;   *Ibid*, p. 37; and ruled a licensed psychologist did not have the ability to treat narcissistic personality disorder.  *Ibid,* p. 37.  The plaintiff alerted the court as to defendant's discriminatory violation of Title II of the ADA and Judge Nastri not only refused to hear argument, but walked out of the court stating "*I've been to federal court before.*"  *Ibid*, p. 38.

This court should focus on the retaliatory actions of defendant Nastri.  At page 37 of the transcript Judge Nastri announced that the Dr. Lauerman letter:  *"It doesn't say anything about Dr. Lauerman ability to address narcissistic personality disorder."* and *"the court finds this exhibit is wholly inadequate to meet the requirements of Judge Nguyen set forth."*  Compare this ruling with exhibit C, the actual letter of Dr. Richard J. Lauerman in evidence before Judge Nastri which says:  *"The focus of therapy is to address…. Narcissistic Personality Disorder…. As a licensed provider in this state and a member of the American Psychological Association, specifically Division 8: Society for Personality and Social Psychology, I believe I possess the capacity to be of assistance to*

you." Judge Nastri not only is discriminating against a fit parent for an alleged mental disability, Judge Nastri retaliates against the plaintiff for suing Judge Nguyen in federal court by refusing plaintiff's attempts to abide by the illegal order so as to see his child.

This court must take notice that Judge Nguyen made the false finding of fact that "*Dr. Smith diagnosed the defendant has having narcissistic personality disorder (NPD).*" Exhibit A, p. 26-27.   This untrue statement is clearly documented in Exhibit A.  This is a clear demonstration of the abuse of discretion which is antithetical to the constitutional rights of the plaintiff. No medical doctor, psychiatrist of psychologist diagnosed the plaintiff with any mental illness. *Ibid.*  With no legal basis to remove custody or visitation from the father, this false finding of fact demonstrates clear retaliation.  Even for a court to *allege* a mental illness as a basis for its decision, absent direct threat, is a violation of Title II of the American with Disabilities Act.

At said hearing, by their own standards, the defendants were duty bound to step in and correct visitation in the best interests of the child as the harm was undisputed by the parties and irreparable.  However, the court ignored the parent and child's right to visitation, ignored the right not to be discriminated due to a disability, ignored the right not to have to pay for the exercise of his constitutional right of visitation of his child and ignored the right of the father to his own beliefs.   The defendants upheld the mother's belief that a licensed psychologist could not serve as the mythical "Therapeutic Supervised Visitation Agency" despite the fact that the licensed professional had extensive experience in the field.  *Ibid Exhibit C.*  It is well established that a parent has a "fundamental liberty interest" in "the companionship

and  society of his or her child" and that "[t]he state's interference with that liberty interest without due  process of law is remediable under [42 U.S.C. § 1983]." _Kelson v. City of Springfield,_ 767 F.2d 651,  654-55 (9th Cir.1985) (citing _Santosky v. Kramer,_ 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d   599 (1982)). "[T]his constitutional interest in familial companionship and society logically extends to  protect children from unwarranted state interference with their relationships with their parents." _Smith   v. City of Fontana,_ 818 F.2d 1411, 1418 (9th Cir. 1987) _overruled on other grounds by Hodgers-  Durgin v. de la Vina,_ 199 F.3d 1037 (9th Cir.1999). Moreover, "the First Amendment protects those  relationships, including family relationships, that presuppose `deep attachments and commitments to  the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" _Board of Dir v. Rotary Club,_ 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (quoting _Roberts v. United States Jaycees,_ 468 U.S. 609, 619-20, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)); _see also Conti v. City of Fremont,_ 919 F.2d 1385, 1388-89 (9th Cir.1990).

Another  issue before this Federal court is the Family Courts refusal, as demonstrated by defendant Nastri's and Nguyen-Odowd's failure to abide by due process of law.  See Exhibit D: Amended Writ of Error.  While the Connecticut Family Court granted (the unconstitutional) request to file over 70 motions for contempt, the Court then proceeded to refuse to docket or hear the motions for over 5 years, thereby interfering with the parent-child relationship.  The Writ of Error, which sought the Appellate Court to order the lower court to docket and hear motions pending for several years, was dismissed by the Appellate Court.  The refusal of the Connecticut

Courts to docket and hear matters in a meaningful time and in a meaningful manner is a due process issue. *Armstrong v. Manzo* 380 U.S. 545, 552 (1965). This refusal of due process demonstrates irreparable harm to the constitutional right of the parent-child relationship in Connecticut's family court.

Often advised by their attorneys, women will seek Protective Orders and Restraining Orders against their husbands when filing for divorce, generally granted, often with no evidence of any harm, thereby capturing de facto custody of the child and custody of the residence. See Exhibit E: *United States of America vs. Rahimi*, U.S. Court of Appeals for the Fifth Circuit, No. 21-11001; IV. A. **p. 32-35**; (March 2, 2023). Over 30,000 Protective and Restraining Orders are issued each year in Connecticut with 80-90% against men despite men more likely the victims of Domestic Violence. See Exhibits F; G. As clearly demonstrated by the Writ of Error, even when fathers have visitation rights, Connecticut Family Courts simply refuse to enforce the civil law of contempt of court visitation orders by a spouse. While the refusal of visitation is criminal under C.G.S. §53a-98, as previously noted, this author could not find a single case of criminal prosecution for Custodial Interference in Connecticut by a spouse refusing visitation. Hence 50% of men have no contact with their children 2 years after divorce. This is a societal crisis.

In light of the testimony of the mother, the plaintiff filed further motions for visitation, however said motions were rejected by the defendant Diana, a due process violation under *Ahneman v. Ahneman*, 243 Conn. 471, 484 (1998). The *Domestic Relations* Abstention Doctrine does not apply as there is no avenue available to plaintiff to seek redress as to the violation of his constitutional rights even if the Conn.

Appellate Court reverses judgment of the Custody Decision.  The State and Federal Courts have concurrent jurisdiction as to Constitutional Matters.  This leaves the Federal Court as the only avenue for redress asked for in the *Prayer for Relief.*

The *Domestic Relations* Abstention Doctrine Does not Apply.

7.  The *Rooker-Feldman* Doctrine Does not Apply.

In its simplest form, *Rooker-Feldman* <u>was</u> a sweeping doctrine that worked to prevent lower federal courts from hearing direct appeals of state court decisions, a right statutorily reserved for the Supreme Court of the United States pursuant to 28 U.S.C. § 1257. However, Scotus has limited this sweeping doctrine and the courts have abandoned the broad four-factor test previously established in *Rooker-Feldman* following the limitations placed on the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.* 544 U.S. 280 (2005).  See *Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021).  So the defendants reliance on the four-factor test in the instant case and in *Sakon v. State of Connecticut et al.,* No. 3:22-cv-00897(AWT) is misplaced as it is not current law. In *Behr,* the 11th Circuit court warned, following *Exxon,* that *"district courts should keep one thing in mine when Rooker-Feldman is raised: it will almost never apply."*

*Behr* is a Domestic Relations case where Louis Behr lost custody of two of his four children.  The Behr(s) removed the case to federal court citing violations of Constitutional Rights and discrimination based upon age, sex, *disability*, and religion. The Behr case was dismissed by the District court citing the *Rooker-Feldman Doctrine.* The 11th Circuit Court reversed noting: *"district courts do not lose subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a*

matter previously litigated in state court." *Behr Ruling citing Exxon Mobil,* 544 U.S. at 292-93.   The instant case does not seek review and rejection of the state court judgment, as the plaintiff has brought *"some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." Id., Behr,* Section III. Paragraph 13 (quoting *Exxon Mobil,* 544 U.S. at 293)

After *Exxon Mobil,* the district court must look to the federal claims on a claim-by-claim approach.  In *Behr* plaintiff asked the district court to consider *"whether their constitutional rights were violated during the proceedings and whether they are entitled to damages for those violations."* The 11th Circuit found: *"That claim falls outside of Rooker-Feldman's boundaries." Id., Behr,* Section IV. Paragraph 2.  The *Behr* court extended claims that fall outside of *Rooker-Feldman* to damages resulting from *"restriction of access to the courts"; "discrimination against them on the basis of gender, religious beliefs, and disability."; "constitutional violations of third parties"* (O.S.).  In the instant case, the plaintiffs do not seek review of the State Court Custody Decision, plaintiffs seek review, declaratory and injunctive relief, compensatory and punitive damages[15] typically found in a Federal Action for violation of Constitutional rights including, *inter alia,* due process (limiting due process access to the court); discrimination (based upon a disability); violation of the parent-child relationship (fit parent); ordering the payment for fees for the exercise of a constitutional right (*Supervised Visitation Agency and payment for Therapy)*; and free speech ("compulsory

---

[15] Whether a Federal Court can award monetary damages remains in issue.  However, if the plaintiff prevails, plaintiff may seek compensation from the State of Connecticut under its own statutes.

unification of opinion").

The *Rooker-Feldman* Doctrine Does not Apply.[16]

8. The *Eleventh Amendment* Does not Apply.

As to the ADA claims of the plaintiff, State Immunity does not apply.  42 U.S. Code § 12202.  Remedies in law and equity are available for a violation against a State to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.  (Pub. L. 101–336, title V, §502, July 26, 1990, 104 Stat. 370.)

*Behr v. Campbell* made clear that *Rooker Feldman* does not bar federal court claims for a state court's violation of its ADA Title II obligations.  Title II of the ADA does not apply to State Courts unless they receive some form of Federal Funding.  As alleged in the complaint, the State of Connecticut and its Judicial Branch of the state regularly receive Federal Funding.[17]   Congress can abrogate a state's Eleventh

---

[16] Defendant does not quote the *Rooker-Feldman* ruling in *Szymonik v. Bozzuto,* No. 3:14-CV-01761 it their brief and properly so.  This 2015 decision is dated law after the SCOTUS finding in *Exxon Mobil*.  In addition, while both cases claimed a violation of constitutional rights to due process, the two cases do not have the same fact set.  In the instant case the Superior Court ordered the submission of a request to leave for all motions while the instant case was *Pendente Lite* and the proceedings remained before the court.  This is a clear violation of *Ahneman v. Ahneman,* 243 Conn. 471, 484 (1998).  *Szymonik* filed a request for leave to modify custody under C.G.S. § 46b-56 years *after* all trial proceedings and appeals came to an end.  To reopen the *Szymonik* case the court was required to determine whether a material change in circumstances may have occurred that may alter the court's past findings of best interest of the child.  *See Hall v. Hall,* 186 Conn. 118.

[17] Most recently, the Judicial Branch of Connecticut received $3,437,400 from the U.S.

Amendment immunity. *Board of Trustees Univ. of Ala. v. Garrett,* 531 U.S. 356, 363-54 (2001). In addition, be accepting receipt of Federal Funds, the Connecticut Judiciary and the State of Connecticut have waived its immunity under Title II of the American with Disabilities Act. Accordingly, Sovereign Immunity does not apply to Title II violations of the American with Disabilities Act in the instant case. The Supreme Court has held that individuals may sue States directly to require compliance with the requirements of Title II of the ADA. *See Tennessee v. Lane,* 541 U.S. 509 (2004). In *Tennessee,* the court held that Title II is an appropriate response by Congress to prevent denial of the right of access to state courts in light of the history of unconstitutional treatment by States of people with disabilities.

For § 1983 claims in the sovereign immunity context "*official-capacity actions for prospective relief are not treated as actions against a State.*" Kentucky v. Graham, 473 U.S. 159, 167 n. 14; *see also Ex parte* Young, 209 U.S. 123. 159-60 (1908).

Congress can abrogate a state's Eleventh Amendment immunity. *Board of Trustees Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-54 (2001). With respect to Title II of the ADA, it is abundantly clear that Congress intended to abrogate the State's Eleventh Amendment immunity. 42 U.S.C. § 12202; *U.S. v. Georgia*, 546 U.S. 151, 154 (2006). The only source of authority that has thus far been recognized as sufficient to enable Congress to abrogate Eleventh Amendment immunity is Section 5 of the Fourteenth Amendment. That section grants Congress the "power to enforce, by

---

Department of Justice. See June 16, 2023 Press Release by Congressman Joe Courtney (CT-02). In 2023, the State of Connecticut received $2.8 billion in direct state fiscal aid under the American Rescue Plan.

appropriate legislation, the provisions of this article." U.S. Const., Amdt. 14, § 5.

In the *Garrett* and *Lane* decisions, the Supreme Court acknowledged that Title II of the ADA sought to enforce the Equal Protection guarantees of the Fourteenth Amendment and also implicated the Due Process Clause as well as other constitutional rights incorporated by Section 5 of the Fourteenth Amendment. The Court specifically noted the Sixth Amendment right of confrontation, the First Amendment right of access to the courts and the due process right to appear and be heard. All of these issues are implicated by the facts of the instant case. The defendant Diana rejected Motions to hear violations of these substantive rights. The defendant Nastri and Judge Klau refused to hear constitutional arguments of the right of visitation and further refused to hear the plaintiff's attempts to comply with the illegal conditions of visitation.[18] The defendant Nastri and Judge Klau refused to act despite testimony from the mother that the current orders of the court were not in the best interest of the child. This appears to be in retaliation to the plaintiff.

Lastly, Judge Nguyen-Odowd, Judge Nastri and Judge Klau refused to give advice as to what a "Therapeutic Supervised Visitation Agency" was and ruled a licensed psychologist was insufficient to meet Judge Nguyen's orders. There is no definition or licensing of what qualifies as to the mythical "Therapeutic Supervised Visitation Agency" in the State of Connecticut. A form of Supervised visitation at one time existed in the Civil Court by means of a Federal Grant where the court approved the agency and the Judiciary paid for the supervisor. The Federal Grant ran out of

---

[18] The plaintiff attempted to submit evidence to the Family Court (Judge Nastri and Judge Daniel Klau). The plaintiff will be filing motion to add Judge Daniel Klau as a defendant.

money and plaintiff's application to the program was denied. See Exhibit H.   However, Judge Nguyen-Odowd ordered the use of the non-existent Judicial Program and the other defendant judges upheld that order with full knowledge the program no longer existed.  The exercise of a constitutional right cannot be conditioned on the payment of a fee or payment for the cost of services.  *Ibid Murdock.*

The current policy of a Civil Court requiring supervised visitation as a condition, where if the defendant does not pose a risk to the health, safety or well-being of his child, is unconstitutional.  The Judiciary does not have the authority to approve or license supervised visitation agencies under current law.  The Judiciary does not have the authority to order the plaintiff to pay a fee to exercise his constitutional right of visitation.  The result is a court *can use this device* to retaliate against the plaintiff by denying visitation under the color of law.

When the plaintiff made inquiry, Judge Nguyen-Odowd, Judge Nastri and Judge Klau all refused to define or provide any guidance as to what constitutes a mythical "Therapeutic Supervised Visitation Agency" as they recognized any attempt to do so would be an illegal overreach of their authority.  The defendant judges refused to explain why the Letter from a Licensed psychologist that plaintiff submitted to the court as evidence of court ordered therapy and as a host for supervised visitation did not meet the conditions of the court.  The defendant judges refused to take evidence that the plaintiff did in fact attend therapy (under protest) until such time as his Health Insurance denied further coverage. This is clear evidence of reprisal.

In fact, the court refused to hold the mother in contempt when the plaintiff offered to pay for a Supervised Visitation with a licensed Psychologist and the mother

refused visitation.   That left the mother as the sole decision maker as to whether visitation would occur.  And consistent with the prior 70 Motions for Contempt, which the court granted request to file and then refused to calendar and hear, the mother simply choose to withhold visitation of the child with malice.

The circular arguments made by the defendant in claiming *sovereign* immunity is suggestive of the circular symbol of Ouroboros.[19]

    a. The defendants are correct in noting no exception to the Eleventh Amendment would permit a claim for violation of the plaintiff's rights under the Connecticut Constitution.  Such claim was illustrative only as discrimination based upon a disability is violative of Title II of the American with Disabilities Act.  The issue was raised to show that the defendants not only refused to conform to Federal Law, they refuse to conform to their own State Constitution.

    b. A finding of discrimination in Federal Court can be submitted to the Connecticut Office of the Claims Commissioner pursuant to C.G.S. §§ 4-141 - 4-165c and in §54-102uu; including claims related to findings of a discriminatory practice pursuant to C.G.S. § 46a-82.

    c. The Judges may be sued in Federal Court when they act outside of their jurisdiction and outside of Constitutional Law.  The creation of a mythical "Therapeutic Supervised Visitation Agency" and the levy of a fee as a condition of visitation are acts prohibited by our Constitution and the defendants have acted outside of their jurisdictional authority as allowed by State or Federal

---

[19] Ouroboros is a sign that evil is knocking at your door.

Law.  As such plaintiff can seek relief in both Federal and State Court.  *Ibid,*
*Behr Ruling citing Exxon Mobil,* 544 U.S. at 292-93.   Let us take absurd
examples.  What if a family court judge found the father believed he was the
reincarnation of a cow.  Can the court order the father have no contact with
his child until the father submitted to therapy for this belief?  Reincarnation is
a basic belief of 1 billion Hindus.  Or could a judge remove custody from Forest
Gump who clearly demonstrated his ability as a Fit Parent?  Absurd examples
are simple tests of the principle.  Here the *"best interest of the child"* principal
fails as the court cannot discriminate based upon a religious belief or based
upon a mental disability.

d.  The defendant properly cites the exception for §1983 and §1985 claims seeking
prospective injunctive relief to prevent an ongoing constitutional violation,
*Mary Jo C. v. N.Y. State & Local Ret. Sys.,* 707 F.3d 144, 166 (2d Cir. 2013).
The plaintiff has alleged facts to support a conclusion that Defendants are
committing an ongoing violation of Plaintiffs' federal constitutional rights and
this violation is systemic in other proceedings before the State Court.

   i.  I have alleged that the father and child have not seen each other since
July 8, 2022 and that the damage is ongoing and irreparable and in
violation of our constitutional rights under *Troxel v. Granville*, 530 US 57,
65 (2000).

   ii.  I have alleged that the defendants have required me to pay a fee to
exercise my constitutional right in violation of my constitutional rights
under *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) and that damage is

ongoing and irreparable.

iii.   I have alleged that the court, as a condition of visitation, has required me to reeducate my beliefs to a *"compulsory unification of opinion"*, a constitutional violation under the First Amendment and that damage is ongoing and irreparable. *West Virginia State Board of Education, et al v. Walter Barnette et al., 319 U.S. 624 (1943)*.  This is not one step away from Fascism, this is Fascism.[20]

iv.   I have alleged that the defendants have made the false judicial finding that I have a disability of narcissistic personality disorder (NPD) and then discriminated against me based upon a that alleged disability, a violation of Title II of the American with Disabilities Act whether the disability exists or not.[21] [22]

---

[20] The concept is referred to as "Selective Populism".  Fascists use this concept to delegitimize democratic institutions they accuse of "no longer representing the voice of the people."

[21] At page 23 of 54 of the Memorandum of Decision, Judge Nguyen makes the finding of fact that *"Dr. Smith diagnosed the defendant with narcissistic personality disorder (NPD)."* However, nowhere in the custody evaluation does Dr. Smith diagnose the defendant with NPD. In fact, upon direct cross-examination, Dr. Smith testified she did not diagnose J.S. with NPD. See *Brief in F.S. v. J.S.,* Case No. AC 45698, Appellate Court of the State of Connecticut. *Excerpt – Testimony of Dr. Smith, Transcript of Proceedings of 12/02/2021; page 78 Line 15-16. Addendum Exhibit P.* Nowhere in any of the evidence or testimony does a medical doctor, psychologist, or psychiatrist provides testimony that the defendant has NPD.  This gives unequivocal evidence that Judge Nguyen sought to retaliate against the plaintiff for filing the Federal Civil Rights Lawsuit and given the plaintiff's stellar historical qualifications as a father as proven by his son's testimony and no less than three character witnesses, she had to make something up.

v.   I have alleged that the defendants have violated my due process rights that required requests for leave in violation of *Ahneman v. Ahneman;* and refused to docket and hear over 70 pending motions for contempt of visitation orders for as long as 5 years causing irreparable harm.   The refusal of the family court to docket and hear matters in a meaningful time and in a meaningful manner is a due process issue.   *Armstrong v. Manzo* 380 U.S. 545, 552 (1965).

9.   *The Instant Case is not Duplicative.*

The 11th Circuit Court reversed noting: *"district courts do not lose subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court."* *Behr Ruling citing Exxon Mobil,* 544 U.S. at 292-93.   The instant case does not seek review and rejection of the state court judgment, as the plaintiff has brought *"some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." Id., Behr,* Section III. Paragraph 13 (quoting *Exxon Mobil,* 544 U.S. at 293).

Therefore, in *Exxon,* the Supreme Court has reaffirmed the principle that federal courts enjoy concurrent jurisdiction over matters pending in state court.

An important exception to all abstention doctrines is based on flagrantly unconstitutional state laws and decisions dealing with core First Amendment Speech. *City of Houston v. Hill,* 482 U.S. 451 (1987).   According to the Supreme Court in

---

[22] "Title II protects three categories of individuals with disabilities: (3) Individuals who are regarded as having such an impairment, whether they have the impairment of not."  The American with Disabilities Act, Title II Technical Assistance Manual.  II-2.1000(3); Regulatory references: 28 CFR 35.104

*Houston,* were the actions of judges and their interpretation of the state's *best interest of the child standard* runs afoul of the First Amendment, an exception to the abstention doctrines exist.

10. *Judicial Immunity does not Apply.*

In the words of the Supreme Court, § 1983 was designed "to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, *or judicial.*'"[23]

The decision of Judge Nguyen-Odowd to close plaintiff's case and deny the 70 pending motions for contempt for failure to prosecute when plaintiff exercised his ADA Accommodation and failed to show to an afternoon session is an Administrative and not Judicial decision.  "*Administrative decisions, even though they may be essential to the very functioning of the courts, have not been regarded as judicial acts.*" *Forrester v. White,* 484 U.S. 219, 228 (1988), *citing Ex parte Virginia,* 100 U.S. 339 (1880). The actions of Judge Nguyen-Odowd meet the "deliberate-indifference" standard of the ADA adopted by five federal circuits.  *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.,* 729 F.3d 248, 262-63 (5th Cir. 2018).

Supreme Court precedent also explicitly allows for suit under § 1983

---

[23] Mitchum v. Foster, 407 U.S.225, at 241–42 (1972): (citing CONG. GLOBE, 42d Cong., 1st Sess. 361 (statement of Rep. Swann); id. at 385 (statement of Rep. Lewis); id. at 416 (statement of Rep. Biggs); id. at 429 (statement of Rep. McHenry); id. at 599–600 (statement of Sen. Saulsbury); id. app. at 179 (statement of Rep. Voorhees); id. app. at 216 (statement of Sen. Thurman)); see also Pierson v. Ray, 386 U.S. 547, 561 (1967) (Douglas, J., dissenting) ("[E]very member of Congress who spoke to the issue assumed that the words of the statute meant what they said and that judges would be liable.").

against state judges, albeit with some limitations. While the Court has recognized some judicial immunity, it has continued to recognize the distinction between suits for damages and suits for prospective relief in the context of state judges. In *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), the Court held that, while judicial immunity is generally a bar to damages suits against state judges, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."

If an official-capacity suit could never be brought against a judicial officer, this provision of § 1983 would be superfluous. Cf. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) (applying the presumption against superfluous language). Even under the amended version of § 1983, a plaintiff may still seek declaratory relief,[24] may seek injunctive relief when a declaratory decree is violated or is unavailable, and may seek damages when the basis of the suit is a

---

[24] See *Just. Network Inc. v. Craighead County*, 931 F.3d 753, 762 (8th Cir. 2019) ("Our conclusion that [defendant judges] are entitled to judicial immunity does not resolve whether [plaintiff] may seek injunctive and declaratory relief."); *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009) (per curiam) ("[J]udicial immunity does not bar declaratory relief . . . ."); *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (per curiam) ("[J]udicial immunity protects the Defendants only from Appellant's request for injunctive relief. But § 1983 does not explicitly bar Appellant's request for declarative relief."); *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003); *Davis v. Campbell*, No. 13-cv-0693, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014) ("The doctrine of judicial immunity also does not shield judges from claims for prospective declaratory relief." (quoting *LeDuc v. Tilley*, No. 05CV157MRK, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005))). Declaratory relief must be prospective. *Just. Network Inc.*, 931 F.3d at 764.

judge's "non-judicial action"[25] or action clearly exceeding the judge's jurisdiction.[26]

The actions of Judge Nguyen-Odowd and Judge Diana in rejecting pleadings during an ongoing case is particularly capricious after such actions were found by the Connecticut State Supreme Court in *Ahneman v. Ahneman* to be a violation of constitutional due process rights.  Of note, both judges rejected motions to reconsider which cited *Ahneman.*  Note, the *rejection of pleadings* or the *refusal to docket pending motions,* is an adminstrative act and not a judicial act. See below.

The actions of Judge Nastri in the May 4, 2023 pleadings where he denied any visitation arrangement which was in the best interests fo the child; upheld the requirement for therapy as a condition of visitation (violating *West Virginia v. Barnette)*; upheld the requirement of a $100/hour Visitation Agency chosen by the mother as a condition of visitation *(*violating *Murdock v. Pennsylvania)* ; and upheld the necessary treatment of the plaintiff for an alleged mental disability as a condition of visitation (violating Title II of the ADA and 5th Amendment to the Connecticut Constitution) and denied the motion for contempt of the mother for refusing a visitation with a licensed pschologist acting as a supervisor (retailation under the ADA) are all actions exceeding the judge's jurisdiction and violates of Constitutional Rights under the color of law.

A Motion to Reconsider was filed as to Judge Nastri's actions and Judge Nastri

---

[25] *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (per curiam) (citing *Forrester v. White,* 484 U.S. 219, 227–29 (1988); *Stump v. Sparkman,* 435 U.S. 349, 360 (1978)).

[26] *Mireles.* at 12 (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351 (1872)).

recused.  The actions of Judge Daniel Klau were identical to the actions of Judge Nastri noted above.  In addition, Judge Klau required the plaintiff to pay for and submit to therapy before the court would consider any visitation of the child.  So the plaintiff is left to seek treatment for a medical condition he does not have and pay $41,600 per year to have visitation with his child thru a Supervised Visitation Agency.  This is clear retaliation by Judges acting outside of their authority under the color of law and in retaliation for bringing the Federal lawsuit.

Judicial immunity does not extend to administrative acts.  When all the state actors, Diana, Nastri, Nguyen-Odowd, Connors *refused* to docket and hear pending Motions for Contempt for over 70 lost visitations causing irreparable harm to the constitutional rights of the plaintiff, they acted in an administrative role and not a judicial rule.  "*Administrative decisions, even though they may be essential to the very functioning of the courts, have not been regarded as judicial acts.*" *Forrester v. White,* 484 U.S. 219, 228 (1988), *citing Ex parte Virginia,* 100 U.S. 339 (1880).

11. Is the Current Policy of Best Interest of the Child Constitutional?

The constitutional rights of our children are routinely violated by the current policies of Connecticut Family Courts.  The constitutional rights of our children are routinely violated by the current policies of Connecticut's criminal courts.[27] [28]  Family

---

[27] There are over 30,000 Protection Orders issued each year by the State of Connecticut, which separate children from their parents, most of which are issued absent evidence of direct threat or injury.  See discussion of the Constitutional abuse of protection orders *United States of America vs. Rahimi*, United States Court of Appeals for the Fifth Circuit, No. 21-11001 (March 2, 2023); p. 32-34.

[28] Evidenced by father's loss of over 170 court ordered visitations, in Connecticut, a mother can simply refuse visitation with little to no consequence.  Custodial interference refers to a parent breaking court determined custodial instructions.  While

Courts routinely ignore Title II provisions of the American with Disabilities Act provisions that a parent cannot be discriminated in the parent-child relationship due to a disability.[29]  However, in the false gospel of the "*best interest of the child*" our courts routinely do so.[30] [31]  Lacking direct threat pursuant to 28 CFR §139, any Family Court that does not give equal visitation rights to either parent in the name of "best interest of child" has violated, in some form, Title II of the ADA and the constitutional rights of the parent and the children. The public entity must ensure a child's safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities. See 28 CFR §130(h).  Compare with the acknowledged systemic discrimination to grant custody to mothers, in direct violation to the Fifth Amendment to the Connecticut Constitution.   Custody, in all sense and purpose, has become a beauty contest where a judge's "discretion" honors the winner based upon current political flavor at sufferance to the Constitution rights of the child.    The parent-child relationship is a constitutionally protected First Amendment right under the due process clause of the Fourteenth Amendment and its Fifth Amendment counterpart, being a fundamental liberty interest predating the

---

custodial interference is a crime CGS § 53a-98, there are no instances of criminal enforcement in any court in CT and the Family Courts cannot enforce criminal laws.

[29] Our Congress has decreed that a person without a disability shares the same rights as a person with a disability.  See 28 CFR §130(i).

[30] Obtain a Protective Order under false testimony, have the father falsely arrested on 16 felonies for violating the protective Order thereby bankrupting the father and creating indigency, and you have the instant case. See *J.S. v. Johnson et al*, United States District Court of Connecticut, Case No. 3:23-cv-00107-AWT.

[31] Spend $400,000, hire a Harvard Law Graduate, tag-team multiple lawyers so as to abuse the ADA rights of the indigent pro se defendant and you have the instant case.

founding.  See *Troxel v. Granville*, 530 US 57, 65 (2000).

12. <u>Conclusion</u>

God awarded custody of the children to the parents.  It is hubris to interdict the will of god. It is the public policy of the state to protect children from abuse.  Lacking clear evidence of abuse, God has already decided the best interests of the child.  And that is for the child to have two parents.

As a society we have entered into a sacred covenant called the United States Constitution.   As a State we have entered into a sacred covenant called the Connecticut Constitution.  Each citizen has the fundamental right to the protections of these covenants.  All who take the oath of office swear to protect these covenants.  To deny the rights of a parent-child relationship is a violation of these sacred covenants.  To refuse by force to allow the god appointed parent to battle for the rights of his child in any forum is a sin against god and country.

All the armies of the world, with all the treasure of the earth, could not by force take a drink from the Ohio.  Our destruction must spring up amongst us.  *Abraham Lincoln.*  The destruction of the sacred covenant made amongst us does not start with civil strife; it starts with the destruction of the family.   If war be had, if civil disobedience be authorized, our survival as a nation begins with the protection of the rights of the American Family and the parent-child relationshp.  Our very survival as a nation begins with children having both a father and a mother. The father and mother are the legal, moral and anointed guardians of the child and not the state.  That is god's plan.  And in god we must trust.

 15 December 2023(01/02/2024)                              */s/* John Sakon

Many prayed.  "Who shall I send?"  I foolishly answered, "Send me."
"Now I live an interesting life" (Ancient Chinese Curse.)

<u>CERTIFICATION</u>

I hereby certify that on the above caption date, a copy of the foregoing was filed with the court and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

By:_____

John Alan Sakon, Pro Se