**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOHN SAKON | : | NO. 3:23-cv-00602 (AWT) |
| NF OWS, | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| TAMMY NGUYEN-O'DOWD, | : | |
| LEO DIANA, | : | |
| ROBERT NASTRI, | : | |
| *Defendants* | : | JANUARY 22, 2024 |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

"The federal courts are not divorce courts. Nor do federal courts have general appellate or supervisory jurisdiction over the decisions or procedures of state family courts. Plaintiff[s'] complaint seeking to overturn the decisions of state court judges does not belong in a federal court." *Skipp v. Conn. Judicial Branch*, No. 3:14-cv-00141 (JAM), 2015 U.S. Dist. LEXIS 38102, *3-*4 (D. Conn. Mar. 26, 2015) (*Meyer, J.*).

In their Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF 37, 42) ("Opp."), Plaintiffs fail to address Defendants' arguments that this Court lacks jurisdiction over the claims brought on behalf of Sakon's minor son because Sakon is not a proper representative or next friend for his son as required by Rule 17(c) and, even if he were, he cannot appear pro se on his son's behalf. Plaintiffs also fail to address Defendants' arguments that Plaintiffs have failed to state claims for which relief may be granted under the ADA, § 1983, or § 1985. Therefore, they have waived any argument that these grounds do not require this Court to dismiss the Amended Complaint as to the minor Plaintiff or in its entirety.

Instead of addressing all the grounds for dismissal raised by Defendants, Plaintiffs have

chosen to address a ground not raised by Defendants. Defendants did not assert that the Amended Complaint (AC) is barred by the *Rooker Feldman* doctrine.[1] Therefore, Plaintiffs arguments against application of the doctrine (Opp. pp.20-22) are irrelevant.[2]

Plaintiffs' remaining arguments do not alter the conclusion that their claims are barred by the Eleventh Amendment, the family relations abstention doctrine, the rule against duplicative litigation, and judicial immunity. This Court should dismiss their Amended Complaint in its entirety.

## I. The *Younger* Abstention Doctrine Bars Plaintiffs' Claims.

*Younger v. Harris*, 401 U.S. 37 (1971) precludes this action to the extent the underlying state court custody case remains pending because proceedings in this Court would significantly interfere with the state court's core function of adjudicating child custody disputes.4321 Plaintiffs' argument that "the instant case does not interfere with the State Court proceedings as to the custody of the child" because "[n]owhere in the Prayer for Relief does the plaintiff seek an order of custody of the child," (Opp. p.9), places form over substance and narrows the scope of the *Younger* abstention doctrine without any legal basis.

Although Plaintiffs do not ask this Court to enter an order of custody, they do ask this Court to invalidate the custody judgment entered by the Superior Court and subsequent orders issued by the Court related to visitation. Specifically, Plaintiffs request in their prayer for relief, among other

---

[1] Defendants raised *Rooker* as a ground to dismiss Plaintiffs' First Complaint in their Motion to Dismiss that pleading (ECF 13). Subsequently, the Second Circuit held in *Hunter v. McMahon*, 75 F.4th 62 (2d Cir. 2023), that the doctrine did not apply where, as here, an appeal of the state court case being challenged was pending at the time the federal complaint was filed. Because of this binding precedent, Defendants do not rely on the *Rooker* doctrine here.

[2] Further, to the extent that Plaintiffs present factual allegations in their Opposition that are not alleged in the Amended Complaint, or evidence that was not appended to their Amended Complaint, this Court should disregard those unpleaded allegations. A memorandum in opposition to a motion to dismiss is not an avenue to plead additional facts. *See Davis v. Giles*, No. 3:17cv1176(AWT), 2018 U.S. Dist. LEXIS 78915, *18 (D. Conn. May 10, 2018) (*Thompson, J.*) (citing *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 n.19 (S.D.N.Y. 2013) and *Walia v. Napolitano*, 986 F. Supp. 2d 169, 184 (E.D.N.Y. 2013)). This Court has already afforded Plaintiffs an opportunity to amend their Complaint after Defendants' motion to dismiss their original complaint was fully briefed. (ECF 22)

requests, that this Court "enjoin defendants from unlawful discrimination complained herein," AC (ECF 23) p.12, "[p]rovide declaratory and injunctive relief against decree that violates ADA, fails due process, discriminates against plaintiffs," *id.*, and seek further declaratory and injunctive relief "against decree that violates the First, Fourth and Fourteenth Amendment to the Constitution as to the right of the parent-child relationship," "against systemic discrimination against plaintiff based upon mental disability in custody decision that violates the Fifth Amendment to the Connecticut Constitution," and "against systemic discrimination against men in custody decisions that violate the Fifth Amendment to the Connecticut Constitution as it is discrimination based upon sex and the equal protection clause of the U.S. Constitution." *Id.* Each of these requests would interfere with the state court's adjudication of Sakon's custody case and appeal by invalidating existing orders of the court and controlling the way the court makes any subsequent custody determinations. *See Falco v. Justices of the Matrimonial Pats of the Supreme Court*, 805 F.3d 425, 427 (2d Cir. 2015). Plaintiffs also provide no legal basis for limiting *Younger's* application when the claims in federal court are grounded in the Constitution. There is none.

Plaintiffs' arguments that they lack an adequate state forum is similarly unavailing. Plaintiff argues that "there is no avenue available to plaintiff to make claim for his constitutional *Prayer for Relief* found in the complaint as to the violations of his constitutional rights." Opp. p.10. However, Connecticut appellate courts have previously considered constitutional challenges to final custody orders. *Sargent v. Emons*, No. 3:13cv863(JBA, 2013 U.S. Dist. LEXIS 172615, *16 (D. Conn. Dec. 9, 2013) (*Arterton, J.*), aff'd 582 Fed App'x. 51 (2d Cir. 2014) (Summary Order). Indeed, Plaintiffs' own Exhibit One to their Opposition to this motion, Sakon's brief in his appeal of the custody judgment to the Connecticut Appellate Court, indicate a contrary conclusion. *See* Opp. Ex. 1 p.5 (statement of issues raised on appeal including ADA claims, due

3

process violations). Further, "[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex Cnty. Ethics. Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Sakon provides no legal basis why he could not raise his additional constitutional claims on appeal.

Plaintiffs' further argument that their claims are not barred by *Younger* because of the extraordinary nature of their claim concerning the "best interest of the child doctrine" and judicial bias also is unavailing. Opp. p., 11-12 (best interest doctrine), 10 ("any State Court will be biased and unable to be trusted on the particular issues raised by the plaintiff."). In Connecticut, courts are required to follow state statute in making child custody orders in dissolutions of marriage, found at Conn. Gen. Stat. § 46b-56, which includes the "best interest of the child" standard. Conn. Gen. Stat. § 46b-56(b). To overcome *Younger*, a challenge to the constitutionality of a statute must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Sica v. Connecticut*, 331 F. Supp. 2d 82, 86 (D. Conn. 2004) (*Kravitz, J.*) (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 201 (2d Cir. 2002)). Plaintiffs do not challenge all aspects and applications of § 46b-56 and, therefore, they do not satisfy any exception to *Younger*.

Plaintiffs also fail to provide specific factual allegations that would support the conclusion that Connecticut Appellate Court judges are individually biased against Sakon and their unsupported allegation that *all* Connecticut state judges are motivated by self-preservation not to rule in any way inconsistent with the "feminist movement, the 'rights of mothers,' [or] the #metomovement [sic]," Opp. p.10, is so sweeping and lacking in a factual basis as to verge on the fantastical. The *Younger* abstention doctrine bars Plaintiffs from obtaining the injunctive relief

they demand, as well as any declaratory relief that would interfere with the ongoing custody matter.

## II. The *O'Shea* Abstention Doctrine Bars Plaintiffs' Claims.

Plaintiffs provide no legal basis for their argument that the *O'Shea* abstention doctrine does not apply in this case. There is none. This case squarely fits into the type of civil cases that the Second Circuit has held fall under *O'Shea*. *Disability Rights N.Y. v. New York*, 916 F.3d 129, 134 (2d Cir. 2019); *Fishman v. Office of Court Admin. N.Y. State Courts*, No. 18-CV-282(KMK), 2020 U.S. Dist. LEXIS 38890, *30 (S.D.N.Y. Mar. 5, 2020). By Plaintiffs' own representation, they are "making complaint about the systemic violation of Title II of the Americans with Disabilities Act and the systemic violation of Constitutional Rights of litigants by the Connecticut Judiciary and State Actors." Opp. pp.13-14. Plaintiffs provide no explanation as to how declaratory and injunctive relief regarding "systemic" conduct of Connecticut judges and other state employees would not constitute structural interference with the operation of the Connecticut family court system. Indeed, Plaintiffs ask for this Court to "invoke enforcement authority for the Fourteenth Amendment upon the State [to] appoint overseer to audit defendants' ADA compliance." AC p.12. It is hard to imagine a more extensive and protracted form of intervention into the state family law court system than the relief requested by Plaintiffs. Such relief "would constitute a form of monitoring of the operation of state court functions that is antipathetic to the established principles of comity." *Sargent v. Emons*, No. 3:13cv863(JBA), 2013 U.S. Dist. LEXIS 172615, *17 n.6 (D. Conn. Dec. 9, 2013) (*Arterton, J.*) (quoting *O'Shea*, 414 U.S. 488, 501 (1974)). Therefore, this Court should abstain from Plaintiffs' claims seeking declaratory and injunctive relief.

## III. The Domestic Relations Abstention Doctrine Bars Plaintiffs' Claims.

The domestic relations abstention doctrine mandates dismissal to the extent that Plaintiffs request that this Court interfere in the state court child custody proceedings. None of the cases

cited by Plaintiffs in their opposition to application of the doctrine even concern the doctrine or its application by the Second Circuit. Opp. pp.14-19. The closest case, *Santosky v. Kramer*, 455 U.S. 745 (1982), was not heard by a federal district court, as it arrived at the Supreme Court on appeal from the New York Court of Appeals, and involved permanent termination of parental rights, not a custody order.

Plaintiffs also do not overcome the domestic relations abstention doctrine through artful phrasing in their Amended Complaint. Despite arguing that Plaintiffs "make[] no claim for this court to vacate the July 15, 2022 Custody Judgment," Opp. p.14, Plaintiffs request in their Prayer for Relief that this Court "[p]rovide declaratory and injunctive relief against decree that violates ADA, fails due process, discriminates against plaintiffs," AC p.12, and seek further declaratory and injunctive relief "against decree that violates the First, Fourth and Fourteenth Amendment to the Constitution as to the right of the parent-child relationship." *Id*. The "decree" described in the Amended Complaint is the July 15, 2022 Custody Judgment. *See, e.g.,* AC p.7 ("The court further retaliated against defendant by decreeing his alleged beliefs to be of mental defect," and continuing to describe orders found in the Custody Judgment). To issue an injunction providing Plaintiffs relief from the decree, this Court would need to find invalid the Custody Judgment based upon the theories raised by the Plaintiffs. As such, the Court would effectively be vacating the Custody Judgment.

Plaintiffs also see declaratory and injunctive relief "against systemic discrimination against plaintiff based upon mental disability in custody decision that violates the Fifth Amendment to the Connecticut Constitution." AC p.12. The relief sought expressly relates to "systemic discrimination . . . in custody decision," and like the other relief sought, this Court would need to conclude that the Custody Judgment was improper and, therefore, all subsequent orders

effectuating that judgment are "systemic discrimination." *Id.* Such findings and relief would clearly interfere with Connecticut courts' ability to decide "matrimonial issues like child custody and visitation rights that are 'on the verge of being matrimonial in nature.'" *Roundtree v. Rockville Juv. Court*, No. 3:21-cv-1289(JAM), 2022 U.S. Dist. LEXIS 65401, *5 (D. Conn. Apr. 8, 2022) (*Meyer, J.*) (citation and quotation marks omitted). This Court should decline to review Plaintiffs' claims, which seek federal review of child custody orders resolved in state court.

   IV.   **The Eleventh Amendment Bars any Claims Against the State of Connecticut and any Official Capacity Claims Against the Defendant Judges.**

Any claims against the State of Connecticut and any official capacity claims against the Defendant Judges are barred by the Eleventh Amendment. Defendants do not dispute Plaintiffs statement that the Supreme Court has held that the ADA abrogates states' Eleventh Amendment immunity. *Tennessee v. Lane*, 541 U.S. 509 (2004). *See* Opp. p.23. However, within the context of state court proceedings that abrogation is for the limited purpose of ensuring that Fourteenth Amendment due process rights of access to the courts are protected. *Lane*, 541 U.S. at 509. Further, Plaintiffs entirely ignore the Supreme Court's subsequent holding in *United States v. Georgia*, 546 U.S. 151 (2006), where it explained that not all ADA cases against the state should be permitted to proceed in federal court, but must be based on an inquiry into:

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 541 U.S. at 159. Under this formulation, Plaintiffs' ADA claims cannot survive this motion to dismiss because, as discussed in detail in Section VIII of Defendants Memorandum in Support of their Motion to Dismiss (ECF 25-1) ("MIS"), they have not alleged facts that would state a claim for violation of the ADA. Plaintiffs do not argue otherwise in their

7

Opposition. Even if they had, Plaintiffs have not alleged facts that state a claim for violation of the Fourteenth Amendment due process clause or come close to the "class of conduct" that Congress could have sought to prohibit as a prophylactic under its clause 5 enforcement powers, assuming *arguendo* that the more generous standard applies and Congress's abrogation powers under Title II were not limited to remedying due process violations. Plaintiffs provide no argument to the contrary. *See* Opp. pp.22-23.

To the extent that Plaintiffs continue to rely on 42 U.S.C. § 1983 or § 1985 as the jurisdictional basis for seeking money damages, declaratory, or injunctive relief against the State of Connecticut or the Defendant Judges in their official capacity none of their arguments overcome the Eleventh Amendment. First, regardless of whether Plaintiffs could seek monetary relief or permission to sue the state for the claims raised here from the Connecticut Claims Commissioner, Sakon does not allege that he has done so here. Nor do Plaintiffs provide legal citations that would support the conclusion that the ability of the Claims Commissioner to waive the State's sovereign immunity would also serve to waive its rights under the Eleventh Amendment. There are none. "[A] State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court." *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (citation omitted). Second, neither § 1983 not § 1985 is applicable to claims against the State of Connecticut or state officials sued in their official capacities seeking monetary or retrospective relief because they are not a "person" acting under color of state law. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent".), *Ammann v. Connecticut*, No. 3:04CV1647(MRK), 2005 U.S. Dist. LEXIS 2841, *4 (D. Conn. Feb. 10, 2005), and *Davis v. New York*, 106 Fed. Appx. 82, 83 (2d Cir. 2004) (Summary Order), Plaintiffs seek compensatory and punitive damages. AC p.12.

Such money damages are clearly barred by the Eleventh Amendment.

Although an exception exists for § 1983 and § 1985 claims seeking prospective injunctive relief brought against a state official responsible for the conduct to prevent an ongoing constitutional violation, *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 166 (2d Cir. 2013), Plaintiffs' claims all require a finding the July 15, 2022 Custody Judgment was invalid, which is retrospective in nature, *see* MIS pp.15-16, and, regardless, prospective injunctive relief is not available against the state judges here because it is expressly barred by the plain language of § 1983, which precludes claims for injunctive relief against a judicial officer absent circumstances not present here. *Id.* p.22.

## V. The Rule Against Duplicative Litigation Bars Plaintiffs' Claims.

Plaintiffs misapprehend Defendants duplicative litigation argument. Plaintiffs argue that the rule is inapplicable because their claims here are different that the issues decided in the state court custody case. Opp. pp.29-30. The rule against duplicative litigation bars Plaintiffs' Amended Complaint because it is duplicative of another *federal* court suit- *Sakon v. State of Connecticut*, No. 3:22-cv-00897(AWT). For the reasons articulated in Defendants' Memorandum in Support of their Motion to Dismiss at pages 17-19, this Court should dismiss Plaintiffs' claims in this case because they are duplicative of another federal court action.

## VI. Any Claims Against Defendant Judges in Their Individual Capacity Are Barred by Absolute Judicial Immunity and Statute.

Plaintiffs assert that the challenged rulings and orders in the state court case are "administrative" and not "judicial" and, therefore, the Defendant Judges are not immune from suit. Opp. pp.30-33. However, the alleged improper conduct of the Defendant Judges consists of the Custody Judgment and various ruling in the custody case, which are clearly judicial in nature and, therefore, are within the scope of judicial immunity. *See. Bliven v. Hunt*, 579 F.3d 204, 210 (2d

Cir. 2009). Further, none of the Defendant Judges may be held personally liable under either Title II or Title V of the ADA, which do not provide for individual liability. *Garcia v. State Univ. of N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001), *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010).

To the extent, if any, that Plaintiffs bring § 1983 or § 1985 claims against Defendant Judges in their individual capacity, Plaintiffs' claims against them arise from their conduct entering a custody judgment in a dissolution case and entering subsequent orders in the same case enforcing that judgment. Such conduct clearly falls within the scope of judicial immunity.

Insofar as Plaintiffs seek injunctive relief against Defendant Judges in their individual capacity pursuant to § 1983, such relief is barred for two additional reasons. First, injunctive relief is only available against a state officer in their official capacity. *Marsh v. Kirschner*, 31 F. Supp. 2d 79, 80 (D. Conn. 1998). Second, claims of injunctive relief against Defendant Judges in their individual capacity are barred by the plain text of §1983. 42 U.S.C. §1983.[3] See MIS p.22. This Court should dismiss all individual capacity claims against the Defendant Judges.[4]

## CONCLUSION

For the foregoing reasons, and those found in Defendant's Memorandum in Support of their Motion to Dismiss Plaintiffs' Amended Complaint, Defendants request that this Court dismiss Plaintiffs' Complaint in its entirety.

---

[3] Regardless of whether claims for declaratory relief against judges are barred under § 1983 or by the Eleventh Amendment, such claims are also barred by the abstention doctrines discussed above.

[4] The remainder of Plaintiffs' Opposition is argument regarding the merits of their constitutional claims challenging the best interest of the child standard for child custody. Because the merits of that claim are not relevant to the grounds for dismissal discussed in the remainder of their Opposition, and Plaintiffs do not argue that their Amended Complaint adequately pleads their constitutional claims, Defendants decline to address their merits argument at this time.

DEFENDANTS,

STATE OF CONNECTICUT

TAMMY NGUYEN-O'DOWD

LEO DIANA

ROBERT NASTRI


WILLIAM TONG
ATTORNEY GENERAL

BY: _/s/ Alma Rose Nunley_
Alma Rose Nunley (ct30610)
Assistant Attorney General
165 Capitol Ave., 5th Floor Hartford, CT 06106
Tel: (860) 808-5020
Fax: (860) 808-5347
Alma.Nunley@ct.gov

**CERTIFICATION**

I hereby certify that on January 22, 2024, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Alma Rose Nunley*
Alma Rose Nunley
Assistant Attorney General