UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
JOHN ALAN SAKON and NF OWS,      :
                                 :
        Plaintiffs,              :
                                 :
v.                               :
                                 :   Civil No. 3:23-cv-602 (AWT)
STATE OF CONNECTICUT, TAMMY      :
NGUYEN-O'DOWD, LEO DIANA, and    :
ROBERT NASTRI,                   :
                                 :
        Defendants.              :
------------------------------ x
```

<u>RULING ON MOTION TO DISMISS</u>

Defendants State of Connecticut and Connecticut Superior Court Judges Tammy Nguyen-O'Dowd, Leo Diana and Robert Nastri have moved to dismiss all claims against them. For the reasons set forth below, their motion to dismiss is being granted.

I.   **BACKGROUND**

The plaintiff,[1] John Alan Sakon, filed this action on May 9, 2023, proceeding <u>pro se</u>. The plaintiff later filed an Amended Complaint, ECF No. 23, which is the operative complaint.

The plaintiff's claims relate to the conduct of defendants Tammy Nguyen-O'Dowd, Leo Diana, and Robert Nastri, all of whom presided as Judges of the Connecticut Superior Court in <u>Francelia Sakon v. John A. Sakon</u>, HHD-FA16-6071228-S (Conn.

---

[1] This ruling refers to plaintiff John Alan Sakon as "the plaintiff" because, as a matter of law, he cannot bring claims on behalf of his minor son, O.W.S. <u>See</u> Section III.A.

-1-

Super. Ct. 2016) (the "State Case"), which was a dissolution of marriage action brought against the plaintiff by Francelia Sakon on September 14, 2016. On April 3, 2018, the parties in the State Case entered into a Bifurcated Dissolution Agreement to dissolve their marriage and leave for a future proceeding the determination of the custody of their child, O.W.S. On July 15, 2022, following a custody hearing that took place over numerous days in 2021 and 2022, Judge Nguyen-O'Dowd issued a decision on the issue of custody (the "Custody Decision"). In the Custody Decision, the court made factual findings about the plaintiff, O.W.S., and Francelia Sakon related to the best interest of O.W.S., and awarded Francelia Sakon sole legal and physical custody of O.W.S. The court gave the plaintiff parental access in the form of supervised visitation on the condition that he engage with a clinician for treatment for a mental health condition (specified in the Custody Decision) with which the plaintiff had been diagnosed. The plaintiff alleges that Judges Nguyen-O'Dowd, Nastri, and Diana "issu[ed] and enforce[ed] discriminatory orders," against him. Am. Compl. at 2. Nguyen-O'Dowd did so by issuing the Custody Decision, and Nastri and Diana did so by issuing orders implementing or upholding it.

The plaintiff appealed the Custody Decision. The Connecticut Appellate Court affirmed the Superior Court's orders in an opinion issued on February 20, 2024. F.S. v. J.S., 223

Conn. App. 763 (2024). The plaintiff was granted an extension of time to June 17, 2024 to file a petition for certification to the Connecticut Supreme Court, but has not filed such a petition with the Connecticut Supreme Court.

The Amended Complaint has five claims. In Count 1, the plaintiff claims that

> the broad discretion assumed under the "best interest of the child standard" as adopted by the State of Connecticut allows discrimination based upon sex, allows discrimination based upon belief, allows discrimination based upon religion, invites corruption, promotes litigation, promotes unproven psychological premises of so called experts, promotes a unification of opinion, is systemically discriminatory against men, [and] violates [Article First, § 20[2] of] the Connecticut Constitution as fathers lose custody 80% of the time, causes 40% of fathers to lose contact with their children within one year of the divorce, deprives the children of two parents and is unconstitutional.

Am. Compl. at 10.

In Count 2, the plaintiff claims that the

> "best interest of the child standard" is in

---

[2] The plaintiff refers to this section as the "Fifth Amendment" to the Connecticut Constitution, but quotes directly from Article First, § 20. See Am. Compl. 2, 9, 11, 12. The court notes that Section 20 was amended by Articles V and XXI of the Amendments to the Constitution of the State of Connecticut. See State v. Jose A.B., 342 Conn. 489, 505 n.19 (2022) (relating the amendment history of Article First, § 20 of the Connecticut Constitution).

This section provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const. art. I, § 20. It is known as the "state constitution's equal protection clause." Jose A.B., 342 Conn. at 510.

> violation to the First, Fourth and Fourteenth
> Amendment[s] of the U.S. Constitution. The
> lawful standard under constitutional law being
> the ability of the parent to provide housing,
> clothing and nourishment to their child in a
> lawful manner without neglect or abuse and the
> ability of each parent to take an active
> participation in the child's life without
> interference from the other parent or from the
> State.

Id. at 11.

In Count 3, the plaintiff claims that "the Connecticut Family court may not consider any physical or mental impairment of a qualified individual under Title II of the [Americans with Disabilities Act ("ADA")] and under [Article First, § 20[3] of] the Connecticut Constitution in the making of custodial decisions."

Id.

In Count 4, the plaintiff claims that

> the parent-child relationship is a
> constitutionally protected First Amendment right
> under the due process clause of the Fourteenth
> Amendment and its Fifth Amendment counterpart,
> being a fundamental liberty interest predating
> the Founding and the State may not impose a
> charge for a service or fee for the enjoyment of
> [] said right as this parent-child right is
> granted protection in the Federal Constitution
> by the founding fathers.

Id.

In Count 5, the plaintiff claims that "a court may not order a parent to enter therapy to reform and reeducate their

---

[3] Again, the plaintiff refers to this section as the "Fifth Amendment" to the Connecticut Constitution.

beliefs as a condition of custody, visitation and further commerce with their child. Such an action being a 'compulsory unification of opinion' which is antithetical to the values set forth in the First Amendment." Id. (emphasis in the original).

The plaintiff brought a previous federal action, Sakon v. [Nguyen-O'Dowd], No. 3:22-cv-528 (AWT) ("Sakon I"), which he "[withdrew] and refiled as" Sakon v. State of Connecticut, et al., No. 3:22-cv-897 (AWT) ("Sakon II"). Pl.'s Opp., ECF No. 42 at 7 n.8. According to the plaintiff, Sakon II concerns certain "Title II [Americans with Disabilities Act] constitutional violations of Judge [Nguyen-O'Dowd] at trial and before her Memorandum of Judgment of July 15, 2022." Id. at 2 n.1. The plaintiff differentiates Sakon II from "the instant case, [where] the plaintiff challenges the actions of Judge [Nguyen-O'Dowd], Judge Diana, Judge Nastri and Judge Klau from July 15, 2022 and thereafter." Id. Judge Klau was never named as a defendant in this case.

## II.  LEGAL STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d

Cir. 2000)). On a Rule 12(b)(1) motion to dismiss, the party
asserting subject matter jurisdiction "bears the burden of
proving subject matter jurisdiction by a preponderance of the
evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d
635, 638 (2d Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(1), the
court must accept as true all material factual allegations in
the complaint. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
However, the court is "not to draw inferences from the complaint
favorable to the plaintiffs." J.S. ex rel. N.S. v. Attica Cent.
Schs., 386 F.3d 107, 110 (2d Cir. 2004). Rather, "jurisdiction
must be shown affirmatively, and that showing is not made by
drawing from the pleadings inferences favorable to the party
asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d
129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511,
515 (1925)).

When deciding a motion to dismiss under Rule 12(b)(6), the
court must accept as true all factual allegations in the
complaint and must draw inferences in a light most favorable to
the plaintiff. See Scheuer, 416 U.S. at 236. Although a complaint
"does not need detailed factual allegations, . . . a plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will

-6-

not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
(2007) (citations omitted) (citing Papasan v. Allain, 478 U.S.
265, 286 (1986)) (on a motion to dismiss, courts "are not bound
to accept as true a legal conclusion couched as a factual
allegation"). "Nor does a complaint suffice if it tenders 'naked
assertion[s]' devoid of 'further factual enhancement.'" Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at
557). "Factual allegations must be enough to raise a right to
relief above the speculative level, . . . on the assumption that
all the allegations in the complaint are true (even if doubtful
in fact) . . . ." Twombly, 550 U.S. at 555 (citations and
internal quotations omitted). However, the plaintiff must plead
"only enough facts to state a claim to relief that is plausible
on its face." Id. at 570. "A claim has facial plausibility when
the [claimant] pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Iqbal, 556 U.S. at 678.

"The function of a motion to dismiss is 'merely to assess
the legal feasibility of the complaint, not to assay the weight
of the evidence which might be offered in support thereof.'"
Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn.
1999) (quoting Ryder Energy Distribution v. Merrill Lynch
Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). The issue
on a motion to dismiss "is not whether [the] plaintiff will

prevail, but whether [the plaintiff] is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

"[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

When interpreting the allegations in a pro se complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

"Nonetheless, a pro se complaint must state a plausible claim for relief," Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)), and the defendants have filed a Notice to Self-Represented Litigant Concerning Motion to Dismiss as required by Local Rule 12(a). Consistent with the liberal reading of a pro se plaintiff's complaint, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Walker, 717 F.3d at 122 n.1.

## III. DISCUSSION

The court concludes that the plaintiff cannot bring claims on behalf of the minor child O.W.S.; that the claims against the State of Connecticut and against the individual defendants in their official capacity are barred by the Eleventh Amendment; that the court should decline to exercise supplemental jurisdiction over the individual capacity claims brought under Article First, § 20 of the Connecticut Constitution in Count 1 and Count 3; that the individual capacity claims in Counts 2, 4, and 5 are barred by judicial immunity; and that the individual capacity ADA claim in Count 3 is improperly asserted against the defendants in their individual capacities. In addition, the court concludes that pursuant to the domestic relations abstention doctrine, it should, in any event, decline to exercise supplemental jurisdiction over

the plaintiff's claims.

## A. Claims Purportedly on Behalf of O.W.S.

The plaintiff can not bring claims on behalf of his son O.W.S. It is undisputed that the Custody Decision awarded sole legal and physical custody to the child's mother, Francelia Sakon, well before the plaintiff commenced this action. As "sole custodian [Francelia Sakon] has the ultimate authority to make all decisions regarding [the] child's welfare, such as education, religious instruction and medical care." Emerick v. Emerick, 5 Conn. App. 649, 657 n.9 (1985); accord Dufresne v. Dufresne, 191 Conn. App. 532, 545 (2019) (quoting the definition of "sole custodian" from Emerick).

"A minor or incompetent person normally lacks the capacity to bring suit for himself," so Federal Rule of Civil Procedure 17(c) "provides that a minor or incompetent person may be represented by a general guardian, a committee, a conservator, or a similar fiduciary . . . ." Berrios v. New York City Housing Auth., 564 F.3d 130, 134 (2d Cir. 2009) (citing Fed. R. Civ. P. 17(c)) (other citations omitted). A parent with legal custody of a child is an authorized representative. Among the numerous decisions inherent in a parent's legal custody of a child is "the decision that a child be a plaintiff in a federal lawsuit." Mulready v. Mulready, No. 3:06-cv-934 (AWT), 2007 WL 1791120, at

*1 (D. Conn. June 16, 2007). <u>See also</u> <u>Caban ex rel. Crespo v. 600</u> <u>E. 21st Street Co.</u>, 200 F.R.D. 176, 179 (E.D.N.Y. 2001) ("natural guardian has the right to sue on behalf of her child" and mother sued as natural guardian); <u>Sanders v. Sanders</u>, 20-CV-5621 (VEC), 2021 WL 4392053, at *1 n.4 (S.D.N.Y. Sept. 24, 2021) (father "had no authority to bring this lawsuit on behalf of his children" under Fed. R. Civ. P. 17(c) when mother "had sole legal custody of both of them" as granted in divorce judgment). "Federal . . . law defer[s] to a general guardian <u>where such guardian has</u> <u>already been appointed</u>." <u>Neilson v. Colgate-Palmolive Co.</u>, 199 F.3d 642, 656 (2d Cir. 1999) (emphasis in original).

## B.  State of Connecticut and Official Capacity Claims

### 1.  Claims Except the ADA Claim in Count 3

"A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121 (1984). The Amended Complaint names as defendants the State of Connecticut and three Connecticut Superior Court judges. "States—and state officers, if sued in their official capacities for retrospective relief—are immunized by the Eleventh Amendment from suits brought by private citizens in federal court . . . ." <u>K</u> <u>& A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of</u> <u>State of N.Y.</u>, 189 F.3d 273, 278 (2d Cir. 1999). "[A]s when the

State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Pennhurst, 465 U.S. at 101-02.

Although Ex parte Young, 209 U.S. 123 (1908) provides an exception to the Eleventh Amendment bar, the Amended Complaint does not meet the requirements for that exception. Under Ex parte Young, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (citing Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002); In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372 (2d Cir. 2005)). "[D]eclaratory relief is not permitted under Ex parte Young when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." New York State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York, 911 F. Supp. 2d 111, 129 (N.D.N.Y. 2012). "[T]he Ex Parte Young exception extends only to violations of federal law, not state law." Campbell v. Waterbury, 585 F. Supp. 3d 194, 203 (D. Conn. Feb. 9, 2022) (citing Vega v. Semple, 963 F.3d 259, 283 (2d Cir. 2020)).

-12-

The Amended Complaint seeks injunctive and declaratory relief in addition to money damages. The relief the Amended Complaint seeks, however, is retrospective in nature. The Amended Complaint claims that the Custody Decision issued by Judge Nguyen-O'Dowd on July 15, 2022 constituted a violation of the plaintiff's constitutional rights and rights under the ADA, and that Judges Diana and Nastri (and possibly Nguyen-O'Dowd) have subsequently issued orders implementing or upholding the Custody Decision. Thus, while the Amended Complaint alleges that action by the defendant judges continues to have an impact on the plaintiff, it does not allege facts showing that there is any ongoing violation by those judges of the plaintiff's rights, nor any prospective violation. See Idlibi v. Burgdorff, No. 3:22-cv-902 (JAM), 2023 WL 3057160, at *1, *2-*3 (D. Conn. Apr. 24, 2023) (under Ex parte Young exception, allegations concerning effects of Connecticut Superior Court judge's "order terminating [plaintiff's] parental rights" do not "suggest that [the judge] is engaged in any ongoing violation of [plaintiff's] rights"); Gribbin v. New York State Unified Court Sys., 18-CV-6100 (PKC)(AKT), 2020 WL 1536324, at *6 (E.D.N.Y. Mar. 31, 2020), aff'd, 838 Fed. App'x 646 (2d Cir. 2021) (under Ex parte Young, alleging "the consequences of the past alleged violation, e.g., the state court Judgment of Divorce . . . is not the same as alleging an ongoing constitutional violation"); Nat'l R.R. Passenger Corp. v. McDonald, 978 F. Supp. 2d 215, 230-

-13-

32 (S.D.N.Y. 2013), aff'd 779 F.3d 97 (2d Cir. 2015) ("ongoing effects" of taking "do not constitute an 'ongoing' violation of law" under Ex parte Young).

Additionally, the Ex parte Young exception "does not apply to claims against state officials who lack authority to implement the requested prospective injunctive relief." Campbell, 585 F. Supp. 3d at 203. Specifically, the exception

> does not normally permit federal courts to issue injunctions against state-court judges or clerks. Usually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties. If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to [the U.S. Supreme Court], not the entry of an ex ante injunction preventing the state court from hearing cases. As Ex parte Young put it, "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our Government." [Ex parte Young, 209 U.S. at 163].

Whole Woman's Health v. Jackson, 595 U.S. 30, 39 (2021).

Moreover, under the Pennhurst doctrine "'a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment,' and the Court extended the principle to apply equally to 'state-law claims brought into federal court under pendent jurisdiction.'" Vega, 963 F.3d at 284 (quoting Pennhurst, 465 U.S. at 121). "[I]t is difficult to think of a

-14-

greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Pennhurst, 465 U.S. at 106. Thus, "[t]o the extent [the plaintiff] seek[s] prospective relief against Defendants in their official capacity for violations of the 'Connecticut Constitution' and 'state law,' those claims are indeed barred by the Eleventh Amendment under the Pennhurst doctrine." Vega, 963 F.3d at 284 (referring to Pennhurst, 465 U.S. 89) (footnote omitted).

Based on the foregoing, with the exception of the ADA claim in Count 3, all of the plaintiff's claims brought against the State of Connecticut and the state judges in their official capacities are barred by the Eleventh Amendment. The ADA claim in Count 3 is also barred by the Eleventh Amendment, but for the reason discussed below.

### 2.  The ADA Claim (Count 3 in part)

A plaintiff can establish that a particular claim is not barred by the Eleventh Amendment by showing that a state has consented to suit "in unequivocal terms" or that "Congress, pursuant to a valid exercise of power, unequivocally expresse[d] its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly

abrogates state sovereign immunity." <u>United States v. Georgia</u>, 546 U.S. 151, 159 (2006).

In <u>Georgia</u>, the Supreme Court "established a three-step process for analyzing whether Congress has validly abrogated a state's sovereign immunity from suit in the context of a particular Title II claim." <u>Mary Jo C. v. New York State and Local Retirement Sys.</u>, 707 F.3d 144, 152 (2d Cir. 2013). Specifically, a court should

> determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

<u>Georgia</u>, 546 U.S. at 159; <u>see also</u> <u>Bolmer v. Oliveira</u>, 594 F.3d 134, 147-49 (2d Cir. 2010) (utilizing these three "prongs of <u>Georgia</u>" to guide analysis of a Title II sovereign immunity question).

In Count 3, the plaintiff claims that "the Connecticut Family court may not consider any physical or mental impairment of a qualified individual under Title II of the ADA . . . ." (Am. Compl. at 11).

> To establish a violation of Title II, [the plaintiff] must show that (1) he is a "qualified individual with a disability," (2) [the

-16-

> defendants] [are] subject to the ADA, and (3) he
> was, "by reason of such disability, . . . excluded
> from participation in or . . . denied the benefits
> of the services, programs, or activities of a
> public entity, or . . . subjected to
> discrimination by any such entity."

Bolmer, 594 F.3d at 148 (quoting 42 U.S.C. § 12132; citing

Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

Here the plaintiff has failed to meet his burden with respect

to both the first element and the third element.

With respect to the first element, the plaintiff alleges

that "Judge [Nguyen-O'Dowd] ruled [the plaintiff] suffers from

mental impairment . . . requiring 'treatment' . . . ." (Am.

Compl. at 4). "In declaring [the plaintiff] has mental

impairment, [Nguyen-O'Dowd] finds [the plaintiff] is a qualified

individual under the act." Id.

> The term "qualified individual with a disability"
> means an individual with a disability who, with or
> without reasonable modifications to rules,
> policies, or practices, the removal of
> architectural, communication, or transportation
> barriers, or the provision of auxiliary aids and
> services, meets the essential eligibility
> requirements for the receipt of services or the
> participation in programs or activities provided
> by a public entity.

42 U.S.C. § 12131; see also McElwee v. County of Orange, 700 F.3d

635, 640 (2d Cir. 2012). "The term 'disability' means, with

respect to an individual-- (A) a physical or mental

impairment that substantially limits one or more major life

-17-

activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2)(A).

With respect to the requirement that the plaintiff show that he has a "disability," he does not identify any major life activity that is substantially limited by his mental impairment.

With respect to the third element, the plaintiff has not met his burden of showing that he was "by reason of such disability, . . . excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity, or . . . subjected to discrimination by any such entity." 42 U.S.C. § 12132.

As to being denied the benefits of the services, programs or activities of a public entity, the only services, programs or activities provided by the Connecticut Superior Court that are within the scope of the Amended Complaint are presiding over cases and related activities. The plaintiff does not claim, in this particular lawsuit, that the defendants denied him meaningful access to the state courts. Rather his claim in this lawsuit that the Custody Decision and orders based on or related

-18-

to it constituted a violation of his legal rights. In other words, the plaintiff received the services of the Connecticut Superior Court that were due him because the rulings and orders were issued, but he was unhappy with the substance of those rulings and orders.

As to being subjected to discrimination by a public entity, "in a case involving a claim brought solely under Title II, Part A[,] . . . the term 'discrimination' as used in Part A 'may take its meaning from Title I.'" Woods v. Centro of Oneida, Inc., 103 F.4th 933, 938 (2d Cir. 2024) (citing 42 U.S.C. § 12132) (quoting Henrietta D., 331 F.3d at 273 n.7).

> Title I of the ADA states, in relevant part, that the term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . ., unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation . . . of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

Tardif v. City of New York, 991 F.3d 394, 403 n.6 (2d Cir. 2021).

Generally, "[a] qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting

-19-

Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003)). There is no claim, in this particular lawsuit, based on an alleged failure to make a reasonable accommodation.

Where a plaintiff's claim is based on intentional discrimination, the plaintiff may recover under Title II by showing either "discriminatory animus or ill will based on the plaintiff's disability," Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 111 (2d Cir. 2001), or "'deliberate indifference to the rights secured the disabled by [the ADA],'" Fera v. City of Albany, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008) (internal quotations omitted) (quoting Garcia, 280 F.3d at 115). Where the plaintiff's claim is premised on discriminatory animus or ill will based on his disability, the plaintiff must point to "individual comparators or other specific evidence of disparate treatment." Moore v. City of New York, 15-CV-6600 (GBD)(JLC), 2017 WL 35450, at *19 (S.D.N.Y. Jan. 3, 2017). Here the plaintiff does neither.

Where a plaintiff's claim is based on deliberate indifference to his rights, the plaintiff is not required to identify a comparator. See, e.g., Tucker v. Univ. of New Mexico Bd. of Regents, 618 F. Supp. 3d 1201, 1220 (D.N.M. 2022). However, deliberate indifference is an "exacting standard." Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248, 1259 (11th Cir. 2010). The plaintiff must show that a "policymaker acted

with . . . deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 275 (2d Cir. 2009) (cleaned up).

Here the plaintiff claims that "the Connecticut Family court may not consider any physical or mental impairment of a qualified individual under Title II of the ADA . . . in the making of custodial decisions." Am. Compl. at 11. This is not an accurate statement of the law.

> "[C]onsideration of [plaintiff's] disability, standing alone, is not a violation of the ADA." <u>Schweitzer v. Crofton</u>, 935 F. Supp. 2d 527, 553 (E.D.N.Y. 2013), <u>aff'd</u>, 560 Fed. Appx. 6 (2d Cir. 2014) (citing <u>Ward v. Murphy</u>, 330 F. Supp. 2d 83, 98-99 (D. Conn. 2004)). "The issue is whether [defendants] discriminated against [the plaintiff] <u>because of</u> her disability." <u>Id.</u> (emphasis added). "To establish that discrimination occurred 'by reason of' their disabilities, plaintiffs must demonstrate that disability discrimination was a 'but-for cause of any adverse' action." [<u>Watley v. Dep't of Children & Families</u>, No. 3:13-cv-1858 (RNC), 2019 WL 7067043, at *8 (D. Conn. Dec. 23, 2019)] (citing <u>Natofsky v. City of New York</u>, 921 F.3d 337, 348-49 (2d Cir. 2019)). It is not sufficient to state a claim that a plaintiff's disability was one of several motivating factors—but not a "but-for" cause—behind a defendant's action. <u>Id.</u>

<u>Grullon v. Admin. for Children's Servs.</u>, 18-cv-3129 (LJL), 2021 WL 981848, at *12 (S.D.N.Y. Mar. 16, 2021) (some modification in original) (footnote omitted).

Under Connecticut law, a "court may make or modify any
proper order regarding the custody, care, education, visitation
and support of the children . . . ." Conn. Gen. Stat. § 46b-
56(a). "In making or modifying any order . . ., the court shall
consider the best interests of the child, and in doing so, may
consider, but shall not be limited to, one or more of [seventeen
enumerated factors] . . . ." Conn. Gen. Stat. § 46b-56(c).[4]

---

[4] Connecticut General Statutes § 46b-56(a)-(c) provide:

(a) In any controversy before the Superior Court as to the custody or
care of minor children, and at any time after the return day of any
complaint under section 46b-45, the court may make or modify any proper
order regarding the custody, care, education, visitation and support of
the children if it has jurisdiction under the provisions of chapter
815p. Subject to the provisions of section 46b-56a, the court may
assign parental responsibility for raising the child to the parents
jointly, or may award custody to either parent or to a third party,
according to its best judgment upon the facts of the case and subject
to such conditions and limitations as it deems equitable. The court may
also make any order granting the right of visitation of any child to a
third party to the action, including, but not limited to, grandparents.

(b) In making or modifying any order as provided in subsection (a) of
this section, the rights and responsibilities of both parents shall be
considered and the court shall enter orders accordingly that serve the
best interests of the child and provide the child with the active and
consistent involvement of both parents commensurate with their
abilities and interests. Such orders may include, but shall not be
limited to: (1) Approval of a parental responsibility plan agreed to by
the parents pursuant to section 46b-56a; (2) the award of joint
parental responsibility of a minor child to both parents, which shall
include (A) provisions for residential arrangements with each parent in
accordance with the needs of the child and the parents, and (B)
provisions for consultation between the parents and for the making of
major decisions regarding the child's health, education and religious
upbringing; (3) the award of sole custody to one parent with
appropriate parenting time for the noncustodial parent where sole
custody is in the best interests of the child; or (4) any other custody
arrangements as the court may determine to be in the best interests of
the child.

(c) In making or modifying any order as provided in subsections (a) and
(b) of this section, the court shall consider the best interests of the
child, and in doing so, may consider, but shall not be limited to, one
or more of the following factors: (1) The physical and emotional safety
of the child; (2) the temperament and developmental needs of the child;

Factor 13 is "the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child." Conn. Gen. Stat. § 46b-56(c).

Thus, given the numerous statutory factors that a court may consider in making a custody decision, a bare assertion that a

---

(3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; **(13) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background**; (15) the effect on the child of the actions of an abuser, if any domestic violence, as defined in section 46b-1, has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (17) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision.

(emphasis added).

Connecticut Superior Court judge considered a parent's mental health impairment in determining the best interest of the child, as required by Connecticut law, is not sufficient to show that the parent's disability was a but-for cause of discrimination. See Seymour v. Seymour, 180 Conn. 705, 710 (1980) (holding that precursor statute to Conn. Gen. Stat. § 46b-56 regarding custody orders was constitutional, providing for "flexible, individualized adjudication of the particular facts of each case without the constraint of objective guidelines" and was well-suited to the "delicate and difficult process of fact-finding in family matters").

Where a plaintiff's claim is based on disparate impact, "[t]o establish a prima facie case under a disparate impact theory, plaintiff must demonstrate '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (quoting Tsombanidis, 352 F.3d at 574-75). "Thus, 'plaintiffs are ordinarily required to include statistical evidence to show disparity in outcome between groups,'" which "can be done by offering evidence showing that a neutral policy adversely affects a much greater percentage of people with a disability than it affects people without a disability." Id.

(quoting Tsombanidis, 352 F.3d at 575, 577). Here, the Amended Complaint does not allege facts that could establish either element of a prima facie case of discrimination under a disparate impact theory.

Consequently, because the Amended Complaint does not contain factual allegations to establish either the first element or the third element of a claim for violation of Title II of the ADA, as contemplated by the first step of the three-step process set forth in United States v. Georgia, there is no claim to be analyzed with respect to the second and third steps. Therefore, the ADA claim included in Count 3 is barred by the Eleventh Amendment.

### C. Individual Capacity: Count 1 and Count 3 (in part)

Count 1 is an equal protection claim under Article First, § 20 of the Connecticut Constitution. Such a claim is also one of the two claims asserted in Count 3. However, there is no private cause of action under Article First, § 20.

As explained in Rahim v. Barsto, 3:22-cv-619 (MPS), 2022 WL 2704102, at *9 (D. Conn. July 12, 2022):

> Even assuming [the plaintiff] [has] alleged a plausible claim that he had been deprived of equal protection under the law, this Court must decline to exercise supplemental jurisdiction over his claims under Article First, Section 20. See Pierce v. Semple, No. 3:18CV01858 (KAD), 2018 WL 6173719, at *6 (D. Conn. Nov. 26, 2018) ("neither this court nor the Connecticut Supreme court has ever recognized a private

cause of action under Article First, § 20 of the
Connecticut Constitution.") <u>Richard v. Strom</u>,
No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8
(D. Conn. Nov. 19, 2018) (concluding "[t]here is
no established private right of action under the
religious discrimination, due process, or equal
protection provisions (Article First, Sections
3, 8, and 20)"); <u>Minto v. Dep't of Mental Health
& Addiction Servs.</u>, No. HHDCV176076730S, 2018 WL
710124, at *9 (Conn. Super. Ct. Jan. 11,
2018) ("Connecticut courts have unanimously
declined to recognize a private cause of action
under article first, § 20"); <u>see also</u> [<u>Torres v.
Armstrong</u>, No. CV990427057S,] 2001 WL 1178581,
at *5-*7, & n.4 (Conn. Super. Ct. Sept. 6,
2001) (refusing to recognize prisoner's claims
for money damages and injunctive relief brought
directly under Article First, Sections 1, 4, 8,
9, 14 and 20 of the Connecticut Constitution).

<u>See also</u> <u>Wylie v. West Haven</u>, No. CV065006403, 2010 WL 2196493,

at *2 (Conn. Super. Ct. Apr. 21, 2010) (collecting cases);

<u>Campbell v. Quiros</u>, 3:17-cv-946 (CSH), 2018 WL 888723, at *11

(D. Conn. Feb. 13, 2018) (no recognized private right of action;

collecting cases); <u>Marshall v. Town of Middlefield</u>, 3:10-cv-1009

(JCH), 2012 WL 601783 at *9 (D. Conn. Feb. 23, 2012) (same).

"[I]t is inappropriate to exercise supplemental

jurisdiction over [the plaintiff's] claims brought under the

Connecticut constitution that raise new and undeveloped issues

under state law." <u>Holley v. Cook</u>, 3:20-cv-170 (MPS), 2020 WL

6532842, at *4 (D. Conn. Nov. 5, 2020) (citing 28 U.S.C. §

1367(c)(1), which provides, in relevant part: "The district

courts may decline to exercise supplemental jurisdiction over a

claim" that "raises a novel or complex issue of State law . . . .").

Therefore, the court declines to exercise supplemental jurisdiction over the plaintiff's claims under the Connecticut Constitution in Counts 1 and 3.

**D. Individual Capacity: Counts 2, 4, and 5**

In Counts 2, 4, and 5, the plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violations of his rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

In order to state a claim under § 1983, a plaintiff must allege that the conduct at issue (1) was "'committed by a person acting under color of state law,'" and (2) "'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991); Forrester v. White, 484 U.S. 219, 225-26 (1988)).

In addition, under 42 U.S.C. § 1983, "in any action brought

against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." "Cases within this Circuit further clarify that 'the doctrine of absolute judicial immunity now extends to cover suits against judges where the plaintiff seeks not only monetary relief, but injunctive relief as well, unless preceded by a declaration, or by a showing that such declaratory relief is unavailable.'" Cleary v. Grossman, No. 3:23-cv-349 (VAB), 2024 WL 1141859, at *6 (D. Conn. Mar. 15, 2024) (quoting MacPherson v. Town of Southampton, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009)). See also Huminski v. Corsones, 396 F.3d 53, 73-74, n.23 (2d Cir. 2005) (explaining that "statutory immunity" was added to judicial immunity in 1996 amendment to 42 U.S.C. § 1983). Consequently, "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." LeDuc v. Tilley, No. 3:05-cv-157 (MRK), 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) (also collecting cases).

Moreover, any declaratory or injunctive relief sought against a judicial officer acting in his or her judicial capacity must be prospective in nature. See Lewis v. Stango, 3:22-cv-1248 (OAW), 2023 WL 4684666, at *8 (D. Conn. July 21, 2023) (subject to limitation of 42 U.S.C. § 1983, "'judicial immunity is not a bar

-28-

to prospective injunctive relief against a judicial officer acting in her judicial capacity,'") (quoting Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)); LeDuc, 2005 WL 1475334, at *7 ("The doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief.").

There are no factual allegations in the Amended Complaint that could show that the plaintiff could be afforded injunctive relief under Section 1983. Also, as discussed above, the Amended Complaint does not allege facts showing that the plaintiff is seeking prospective relief.

Judicial immunity "is overcome in only two sets of circumstances[:]" by a judge's "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," or by actions that "though [they are] judicial in nature, [are] taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12. The determination of "'whether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" Id. at 12 (modification in original) (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" Id. at 13 (quoting Stump, 435 U.S. at 362). "In other

words, we look to the particular act's relation to a general function normally performed by a judge . . . ." Id.

"[A] judicial act 'does not become less judicial by virtue of an allegation of malice or corruption of motive.'" Id. at 13. (quoting Forrester, 484 U.S. at 287); see also Bliven, 579 F.3d at 209 ("even allegations of bad faith or malice cannot overcome judicial immunity").

The Amended Complaint alleges that Judge Nguyen-O'Dowd issued the Custody Decision and that Judges Nastri and Diana issued orders implementing or upholding it. The Amended Complaint also alleges that Judges Diana and Nastri "conspire[d] in failure to address discrimination," Am. Compl. at 4, and that the "violation [of due process by defendant Judge Nguyen-O'Dowd was] upheld by co-conspirators Diana and Nastri," id. at 5.

There is no factual allegation in the Amended Complaint that suggests that any of the defendant judges took any action which was not in the context of presiding over the State Case. "The principal hallmark of the judicial function is a decision in relation to a particular case." Bliven, 579 F.3d at 211. See also Deem v. DiMella-Deem, 941 F.3d 618, 620-21 (2d Cir. 2019) (family court judge presiding over custody dispute was "clearly entitled to judicial immunity"); Ramos v. Putnam Family Court, No. 15-cv-1443 (VAB), 2017 WL 3083727, at *3 (D. Conn. July 18, 2017) (judicial immunity applied when "allegations against [judge]

-30-

concern[ed] actions taken during the adjudication of a state custody case"). Thus, the Amended Complaint does allege facts showing that either of the two circumstances in which judicial immunity can be overcome is present here.

Therefore, the plaintiff's individual capacity claims in Counts 2, 4, and 5 are barred by judicial immunity.

### E. Individual Capacity: Count 3 (in part)

The plaintiff "may not maintain an ADA claim against a state actor in his or her individual capacity." Schlosser v. Elzea, No. 3:19-cv-1380 (SRU), 2020 WL 887752, at *4 (D. Conn. Feb. 24, 2020) (citing Garcia, 280 F.3d at 107). Therefore, the ADA claim asserted against the defendants in their individual capacities must be dismissed.

### F. Abstention

For the reasons discussed above, the plaintiff's claims are either claims that should be dismissed or one as to which the court should decline to exercise supplemental jurisdiction. But even if that were not so, pursuant to the domestic relations abstention doctrine the court would decline to exercise jurisdiction over the plaintiff's claims.

"Although the domestic relations 'exception' to subject matter jurisdiction . . . does not apply in federal-question cases, the domestic relations abstention doctrine . . . does."

Deem, 941 F.3d at 621. "As a matter of judicial economy, state courts are more eminently suited to [domestic relations work] than are federal courts, which lack the close association with state and local government organizations dedicated to handling [the] issues [involved]." Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992)). "Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts." Khalid v. Sessions, 904 F.3d 129, 133 (2d Cir. 2018) (citing Reno v. Flores, 507 U.S. 292, 310 (1993)).

> [E]ven if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field. A federal court presented with matrimonial issues or issues "on the verge" of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts.

Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990). Both of those perquisites are present here.

As to the first prerequisite, here the court is presented with matrimonial issues or issues on the verge of being matrimonial. At issue in Count 1 and Count 2 is the constitutionality of the "best interest of the child" standard as adopted by the State of Connecticut in domestic relations matters. At issue in Count 3 is what evidence Connecticut courts may properly consider in making custody decisions. At issue in Count 4

-32-

and Count 5 is what terms and conditions Connecticut courts may
properly impose in custody and/or visitation orders. Although the
plaintiff "frames his claims in constitutional terms, he is
effectively asking this court to affirm or reverse a child custody
decree." Lomtevas v. Cardozo, No. 05-CV-2779 (DLI)(LB), 2006 WL
229908, at *3 (E.D.N.Y. Jan. 31, 2006).

Thus, the plaintiff's claims are ones that would require the
court to "immerse itself in domestic relations matters that are
properly the province of the state courts." Am. Airlines, Inc.,
905 F.2d at 15; see also Ankenbrandt, 504 U.S. at 705-06
("abstention principles . . . might be relevant in a case
involving elements of the domestic relationship . . . [when] case
presents 'difficult questions of state law bearing on policy
problems of substantial public import whose importance transcends
the result in the case then at bar.'" quoting Colorado River Water
Conservation Dist. v. U.S., 424 U.S. 800, 814 (1976)); Lomtevas,
2006 WL 229908, at *3 ("[a]bstention is particularly urged for
cases concerning visitation rights;" collecting cases and
abstaining where "[c]onsideration of this claim would require the
court to analyze the [state court's] custody decree, determine its
force and validity, and possibly modify it or subsequent custody
proceedings").

As to the second prerequisite, there is no suggestion that

any obstacle exists to the full and fair determination in Connecticut courts of the issues the plaintiff raises in this federal action. The plaintiff moved for an extension of time to file a petition for certification with the Connecticut Supreme Court although it appears he has not timely filed a petition. However, the Connecticut Superior Court will retain "continuing jurisdiction to modify final orders for . . . the care, custody and visitation of minor children [subject to statutory conditions]." Lynch v. Lynch, 135 Conn. App. 40, 56 (2012). See also Conn. Gen. Stat. § 46b-56(a) ("the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children if it has jurisdiction . . ."); Pena v. Gladstone, 168 Conn. App. 141, 148-49 (2016) ("jurisdiction of court to modify decree in matter of custody is continuing one . . . whether inherent or statutory . . . after final decree"); Minot v. Eckardt-Minot, 13 F.3d 590, 594-95 (2d Cir. 1994) ("this Court found 'particularly strong' reasons for abstaining in a case involving a divorced couple's separation agreement, in part because New York courts had a continuing power to modify or enforce the agreement"); Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499, 505-06 (S.D.N.Y. 2004) ("case for abstention is strong" in cases involving inter alia, "a claim of interference with custodial rights, the scope of which is best developed by state courts; and visitation rights, which implicate factual

-34-

disputes concerning custody and threaten to embroil the federal courts in matters over which the state courts have continuing supervision" (footnotes omitted)).

The plaintiff asserts, in a conclusory manner, that the defendant judges are biased against him, but he has not "shown affirmatively," Shipping Fin. Servs. Corp., 140 F.3d at 131 (citing Norton, 266 U.S. at 515), that this court should exercise jurisdiction, see Deem, 941 F.3d at 620, 625 (affirming abstention under domestic relations abstention doctrine despite allegations that defendants, including a family court judge, "conspired to maliciously prosecute [plaintiff] and to violate his right to intimate association with his children").

Based on the foregoing, the court concludes that this case is one where it would be appropriate to decline to exercise jurisdiction over the plaintiff's claims under the domestic relations abstention doctrine.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25) is hereby GRANTED. The claims against the defendants in the Amended Complaint are dismissed as set forth above, except that the court declines to exercise supplemental jurisdiction as to the claims brought under the Connecticut Constitution.

The Clerk shall close this case.

It is so ordered.

Dated this 4th day of September 2024, at Hartford,

Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
